J. H. CAGE v. J. C. TUCKER'S HEIRS.

Delivered September 26, 1896.

1. **Deed to Joint Tenants—Parol Evidence to Show Interest of Each.**

Where a deed is executed jointly to two grantees, without any statement as to the interest of each, the legal presumption that they take equal interests in the property may be overcome by parol evidence of an express agreement that they should hold in proportion to the amount paid by each on the notes executed for the purchase price.

2. **Community Property—Presumption as to Community Debts—Fraud—Burden of Proof.**

Where plaintiffs allege that a sale of community property to defendant by their mother made after their father's death, was fraudulent, since the defendant was not required to see that the proceeds of the sale were applied by her to the payment of community debts, he establishes prima facie a good title in himself by showing the existence of such debts in an amount which reasonably indicates a necessity for the sale, and thereby casts on plaintiffs the burden of proving the alleged fraud.

APPEAL from Comanche.  Tried below before Hon. T. H. CONNER.

*M. F. Martin* and *Lee Young*, for appellant.—1.  The court erred in permitting Mrs. Tucker to testify that the contract and agreement which she declared to be verbal, and not in writing, between John C. and James B. Tucker, whereby it was arranged and agreed that each of the grantees in the deed from John S. Hyatt to the said John C. and Jas. B. Tucker should have such a proportion of the land as each should pay for, when the land should be finally paid out.  This oral contract is not admissible to alter or vary the terms of the written deed from Hyatt.  Chatham v. Jones, 69 Texas, 749; Dolson v. Gonahl, 70 Texas, 621; Earl v. Marx, 80 Texas, 39; DuBois v. Francis, 82 Texas, 173; Watson v. Miller Bros., 82 Texas, 279; Scarbrough v. Alcorn, 74 Texas, 359.

2.  The court erred in paragraph No. 7, in charging the jury that the burden of proof was upon J. H. Cage, because it was only necessary for Cage to prove the existence of valid community debts and this was admitted on each side by the pleadings.  Fagan v. McWhirter, 71 Texas, 567; Ash v. Younger, 65 Texas, 631; Watts v. Miller, 76 Texas, 13; Sanger Bros. v. Heirs of Moody, 60 Texas, 97.

*Benjamin Palmer* and *Lindsey & Goodson*, for appellees.—1.  John C. and J. B. Tucker, having agreed between themselves to purchase the land of Hyatt, and having between themselves agreed to own the same in the proportion that they should contribute to the purchase money, said contract was lawful, and they each received the deed in trust for the other according to this contract or purchase between them; and of this contract it was immaterial that Hyatt should know anything as it did not affect him, and the evidence showing that the entire purchase money was $2,600, and that J. B. Tucker only paid to the time of his death $200, it was proper that parol evidence should be ad-

mitted to show this fact, and for the court to charge the jury to ascertain the amount paid by J. B. Tucker, and to fix his interest thereby. 70 Texas, 453; 39 Texas, 142; 45 Texas, 418; 47 Texas, 122; 59 Texas, 213.

2. On the death of Jno. C. Tucker his interest in the land descended to the plaintiffs, equitably incumbered with the community debts. His widow had no legal right to sell his one-half; but if in good faith she made such sale for the sole purpose of paying these debts, then the sale, on equitable principles, will be upheld; but this sale must be in good faith for that purpose only, and not merely an incident to it; the purchaser must pay such reasonably fair price as shows good faith; and this equitable doctrine cannot be prostituted to serve the mere whim of a survivor, who desires to sell, and a speculative purchaser who desires to purchase, though community debts may have been paid in part with the purchase money. Eastham v. Sims, 32 S. W. Rep., 359; 60 Texas 96; 68 Texas, 335; 48 Texas, 46 and 257.

HUNTER, ASSOCIATE JUSTICE.—The heirs of J. C. Tucker brought this suit against J. H. Cage to recover an undivided one-half interest in 600 acres of land. The amended petition is a formal action of trespass to try title and for rents, and also sets forth their title as having been inherited from their father, who had died leaving P. J. Tucker, their mother, surviving, and leaving the land as community property; that the land was of the value of $5500, and that the community estate owed Mr. Hyatt $700 purchase money on the land, and about $400 of other community debts; that appellant had obtained the conveyance from the surviving widow by a fraudulent combination with her, and for a grossly inadequate price, $1600, well knowing that about $500 of the price paid her in money and property would not be used by her to pay community debts, but would be used for her own use and benefit.

Defendant Cage answered denying all allegations of fraud, and in a long special answer sets up the facts that the community estate was in debt to him and to other persons in the sum of about $1500 or $2000, and that 200 acres of the land was under mortgage to secure Mr. Crow against loss as surety on a bail bond of $500 which had been forfeited, and that the title to part of the land—apparently half—was in J. B. Tucker's heirs, the deed having been made by Hyatt to J. C. and J. B. Tucker, and that the land, by reason of the condition of the title and the mortgage, and by reason of the great depression in the value of lands in the county of Eastland, where it is situated, occasioned by two successsive drouths, was not fairly and reasonably worth any more than $1600, the amount he paid for it; that he did not want to buy it, but was induced by the widow to make the purchase by continued and persistent appeals to him on her part—she representing to him that she had abandoned the premises, and would never live on them again, and that she could never pay the purchase money due on it, unless she could make a sale of it; and that his purchase was made from her in good faith, and not for the purpose of defrauding the plaintiffs.

The evidence showed that she made frequent applications to him to sell, before he agreed to buy, when at last he agreed to pay her $1600 for the place, which he did in purchasing from Hyatt the outstanding purchase money note—principal and interest $720.22—community indebtedness to Cage $219, one horse and one mule $175, $50 in cash previously paid to her, and $300 in cash, and the balance of $135.78, or a part of it, seems to be in dispute between the parties; appellant maintaining that it was paid in cash and debts against the community estate, while Mrs. Tucker insists that only a portion of it has been paid, and the balance had been held back by Mr. Cage to cover estimated expenses of foreclosing the $720.22 vendor's lien note on the land, which it was agreed he should hold and foreclose for his protection against the J. B. Tucker title.

The first assignment of error complains of the action of the court in admitting oral evidence to prove that J. C. Tucker and J. B. Tucker had agreed that the deed to the land should be made to them jointly, but that each should own an interest therein in proportion to the purchase price paid by him on the notes they had jointly executed for the land; the apppellant insisting that the deed by its terms evidenced a conveyance to the two vendees without naming the interest that each should have, and was in law a conveyance to each of an undivided one-half interest, and that oral evidence of any agreement on the subject to the contrary would be changing the written contract, and would be inadmissible.

We are of opinion that the court very properly overruled this objection. The presumption of law would arise on such a deed that the vendees were equal owners, but such presumption would be subject to be overturned by oral testimony of an express agreement to hold in other and different proportions. Freeman on Cotenancy (2d ed.), sec. 105.

This ruling results also in the overruling of the second assignment, relating to the charge of the court to the jury to find from the evidence the interest of each of the vendees.

The fourth assignment of error, in our opinion, must be sustained. It complains of the court's action in charging the jury on the burden of proof. The charge complained of is as follows:

"In connection with the fifth and sixth clauses of the charge just read to you, you are instructed that the burden of proof is upon defendant Cage to show by a preponderance of proof and to your reasonable satisfaction, that the sale to him by Mrs. P. J. Tucker was made in good faith, without fraud, artifice, collusion alleged, for the purpose of paying valid subsisting community debts; that a sale of community property was reasonably necessary in order to pay such community debts, and that defendant Cage paid a price that was under all the circumstances fairly adequate. A failure to so show would entitle the plaintiffs to verdict upon this issue."

In our opinion it devolved upon the plaintiffs below to prove the fraud

they alleged, by a preponderance of the evidence, and the court should have so charged the jury. It was sufficient on the part of the defendant Cage to plead and prove the existence of community debts, in an amount which reasonably indicated a necessity for the sale of property to pay them, and when he did this he established power and authority in the surviving widow to make the sale of the land, and prima facie a good title in himself, inasmuch as he is not required by law to see that the proceeds of the sale received by her are applied to the payment of community debts. We think this view is amply sustained by a line of decisions of our Supreme Court, and is necessary to the security of titles. Watts v. Miller, 76 Texas, 13; Fagan v. McWhirter, 71 Texas, 567; Ashe v. Yungst, 65 Texas, 631; Sanger Bros. v. Heirs of Moody, 60 Texas, 96.

For this error in the charge of the court the judgment in this cause must be reversed and cause remanded, and it is ordered accordingly.

*Reversed and remanded.*