### MATT. A. BURLESON ET AL. v. J. B. ALVIS ET AL.

Decided January 22, 1902.

1.—Innocent Purchaser—Heirs.

A purchaser is charged with notice of the fact that a decedent, through whose surviving wife he claims title, left children surviving him, and that they were his heirs.

2.—Legal Title—Innocent Purchaser—Unknown Equities.

A deed expressly reserving a vendor's lien did not pass the legal title to the grantee nor give to any one buying from his grantee the protection against unknown equities accorded to a purchaser of the legal title.

3.—Notice—Recitals in Deed—Surrender of Notes.

The recital in a deed, as consideration, of the surrender by the grantee of notes given to her by one who had formerly purchased the land from her, would seem to be sufficient to put a subsequent purchaser on inquiry as to whether they were the notes given for the land and the transaction a mere cancellation of the sale and restoration of it to its former status.

4.—Separate Estate—Community—Innocent Purchaser.

Where property was conveyed to the husband during the marriage, a purchaser from his surviving wife who had given bond to account for the community propery, if without notice of the fact that it was purchased with the husband's separate means, will be protected as an innocent purchaser, but to the extent only of the wife's apparent community half interest.

5.—Suit for Land—Outstanding Equitable Title.

An outstanding equitable title to land affords no defense to a suit by the legal owner. Defendant must show that he holds it himself.

**6.—Equitable Title—Notice.**

One seeking to defeat recovery of land by the owner of the legal title by an equitable one must show notice of it to the purchasers of the legal title, or lack of valuable consideration from them.

**7.—Evidence—Judgement—Privity.**

A judgment is not admissible against persons not parties thereto nor claiming in privity.

**8.—Power of Attorney—Revocation by Death—Evidence.**

On the issue of title from T. by his power of attorney of November 18th and deed by the attorney on the 24th of the same month, evidence that he died in November of that year without fixing the day of his death, is sufficient to raise the issue as to whether or not he was living when the power was executed.

Appeal from San Saba.   Tried below before Hon. M. D. Slator.

*Jones & Jones* and *Leigh Burleson,* for appellants.

*Allison & Walters* and *Sidon Harris,* for appellees.

Among the cross-assignments submitted was the following:  Appellants sue for the land in controversy as children and sole heirs of their father, A. E. Burleson, deceased, claiming that it was his separate property.   They deny that their mother, Alice Bills, had any interest in this land.   Therefore, the judgment in cause No. 948, of Naomi Yett against the vendee (Bostick) of their mother, Alice Bills, in which he had impleaded her on warranty, which judgment decreed that Mrs. Yett take nothing by her suit, was not admissible in this case—although appellees hold under deeds from Bostick and Mrs. Yett, because such judgment, had it been in favor of Mrs. Yett, could not have estopped appellants in this suit—their claim, as herein asserted, not having been involved in that suit.   They were in no respect parties, or privies, to the Yett suit, and as they could not have been estopped by the decrees in that case, they can not claim any benefit thereunder.   The appellees objected to the introduction of such judgment for the reasons above assigned and reserved exceptions to the ruling of the court admitting it in evidence

The judgment mentioned in the above cross-assignment of error was entered in cause No. 948, being a suit filed by Naomi Yett against Bostick, McMillan et al. in 1893, in which she sought to recover this land, and in which Bostick impleaded his vendors, Bills and wife.   The judgment is that plaintiff, Naomi Yett, take nothing by that suit.   Bostick and Bills both set up in their answers that this land was the community property of A. E. Burleson and wife, Alice.

These answers were introduced by appellants.   The alleged purpose for the introduction of said judgment was to estop appellees from establishing an independent superior title from Naomi S. Yett, under their deed from her in 1900, above mentioned.

KEY, Associate Justice.—This is an action of trespass to try title to 150 acres of land, part of the Jacob Schmidt survey, in San Saba

County. The appellants, Matt and Jessie Burleson, were the plaintiffs, and J. B. Alvis and J. B. Taft were the defendants. There was a jury trial resulting in favor of the defendants, and the plaintiffs have appealed.

The Jacob Schmidt 640-acre survey of land was patented to David Taylor, as assignee of Jacob Schmidt, September 26, 1873. March 14, 1867, David Taylor conveyed the certificate by virtue of which the land was patented to Chas. B. and Naomi S. Taylor; and the plaintiffs introduced in evidence a power of attorney dated November 18, 1875, executed by Chas. B. Taylor and Naomi S. Yett, formerly Naomi S. Taylor, authorizing W. A. Yett to sell the Jacob Schmidt survey. Also a deed executed by Chas. B. Taylor and Naomi S. Yett, by W. A. Yett, as attorney in fact, dated November 24, 1875, conveying the said survey to N. D. McMillan. Also deed from N. D. McMillan to A. E. Burleson for the land in controversy, dated September 14, 1875. The plaintiffs also proved that A. E. Burleson died in 1882, intestate, and that they are his only heirs. They also submitted testimony tending to show that the land was paid for with means which was the separate property of their father, A. E. Burleson.

The defendants offered testimony tending to show that Naomi S. Yett never signed or executed the power of attorney authorizing W. A. Yett to sell the land; and further testimony tending to show that Chas. B. Taylor died in November, 1875, the exact day not being stated by the witness. The defendants also proved that Mrs. Alice J. Burleson, the surviving wife of A. E. Burleson, qualified under the statute as such survivor. And by virtue of such qualification she had the power to sell any community property belonging to herself and her deceased husband, until she married again, which occurred October 5, 1887, when she became the wife of G. C. Bills. Prior to her second marriage and while she was authorized to sell community property, she executed a deed to the land in controversy to C. L. Nichols, reserving therein a lien upon the land to secure the payment of three purchase money notes for $200 each, bearing 12 per cent interest from July 7, 1885, the day on which the deed and notes were executed. In May, 1888, after Mrs. Burleson had married again, C. L. Nichols and his wife conveyed the land back to her, for the consideration as stated in the deed "of $800 cash to us in hand paid by Mrs. Alice J. Bills, formerly Mrs. Alice J. Burleson, surviving wife of A. E. Burleson, deceased, which consideration is paid by her surrender to us and canceling notes executed to her by said C. L. Nichols, on which there is now due that amount." The defendants also showed that they hold by mesne conveyances from Alice J. and G. C. Bills. They also introduced testimony tending to show an equitable title in the German Emigration and Railroad Company to an undivided one-half interest in the Jacob Schmidt survey, arising out of a contract between the company and Jacob Schmidt, dated January 17, 1847. That instrument was acknowledged October 9, 1854. It was shown that it had never been recorded, nor does the record show

when it was filed in the Land Office. Some other testimony was introduced, which will be referred to hereafter.

On the question of title, the court submitted to the jury two issues: First, whether the property was the separate property of A. E. Burleson, or the community property of said Burleson and his wife Alice; and, second, whether or not the defendants bought without notice of the claim of the plaintiffs. On the latter subject the court charged as follows:

"You are instructed that if you find from the evidence in this case that the defendants J. B. Alvis and J. B. Taft, or the said M. I. Bostick, purchased the land in controversy and paid therefor a valuable consideration in good faith without notice, either actual or constructive, as these terms have been defined to you, of the claim of the plaintiffs herein, then you will find a verdict in favor of the defendants."

It is contended on behalf of appellants that the court should not have given this charge. This contention must be sustained. The defendants deraign title under the deed to A. E. Burleson. They bought from his surviving wife with knowledge of the fact that she was such survivor; and, however ignorant they may have been of the fact that he left children surviving him, the law charged them with knowledge of that fact, and that they were his heirs. Hill v. Moore, 62 Texas, 610; Patty v. Middleton, 82 Texas, 591. But it is contended on behalf of appellees that Mrs. Burleson, as surviving wife, conveyed the property to C. L. Nichols, who after her second marriage conveyed it back to her; and that while the latter conveyance may have been made in settlement of outstanding purchase money notes against the land, thereby in equity restoring it to its former status, yet if the defendants purchased without notice of that fact, they could hold as innocent purchasers.

Two objections are urged in reply to this contention, which are: (1) That the deed from Mrs. Burleson to Nichols in express terms reserved a vendor's lien to secure the payment of the purchase money notes, and therefore, under the rule established in this State, the title did not pass to Nichols; and (2) that the consideration recited in the deed from Nichols to Mrs. Bills was necessarily sufficient to put a purchaser upon such inquiry as would have disclosed the fact that the deed was made in settlement of the former purchase money notes.

Undoubtedly the first proposition is correct, and we are also disposed to sustain the second, though that is not necessary. As the deed from Mrs. Burleson to Nichols did not divest her of the title to the land, the deed from Nichols back to her did not vest the title in her. She could not be invested with that of which she had never been divested. But there is one phase of the case that presented the question of innocent purchaser. In so far as the plaintiffs sought to recover all of the land on the theory that it was the separate property of their father, the doctrine of innocent purchaser might apply. The land having been conveyed to A. E. Burleson during coverture, it was presumed to be community property, and a purchaser from his surviving wife could

deal with her on the faith of that presumption and purchase from her title to an undivided half interest, although Burleson may have paid for the land with his separate means, unless such purchaser had notice of the latter fact. Sanborn v. Schuler, 86 Texas, 116. But the charge of the court on the subject of innocent purchaser should have submitted that question only, and should have told the jury that the defendants plea of innocent purchaser constituted no defense as to an undivided half interest in the land. The charge as given was entirely too broad, and no doubt misled the jury, for which reason the judgment must be reversed. But in view of another trial it becomes necessary to decide some questions presented by the appellees under their cross-assignments.

Ruling on these questions, we hold that the court properly ignored the transfer by Jacob Schmidt to the German Emigration and Railroad Company, first, because that was, at most, an equitable title and defendants failed to connect themselves with it, not having shown that it was ever conveyed by or divested out of the particular company named; second, because if the plaintiffs have any right, it is a legal title, and such being the case, if the defendants would defeat such legal title with a mere equitable right, it devolves upon them to show that the plaintiffs father and those from whom he purchased had notice of the right now asserted by the defendants at the time they purchased, or that they paid no money or other thing of value for the land. Saunders v. Isbell, 5 Texas Civ. App., 513.

We agree with counsel for appellees that the judgment rendered in the suit of Mrs. Naomi Yett against Bostick was not admissible in evidence in this case, and should have been excluded on account of its immateriality.

We think the testimony raised the issue, which should have been submitted to the jury, whether or not the deed from David Taylor to his daughter, then Naomi S. Taylor, but subsequently Naomi S. Yett, was intended as a gift of sale, because if it was a gift it was her separate property; and as the power of attorney from her to her husband was not properly acknowledged, it conferred no authority upon him to sell her separate property.

We also sustain appellees contention that the evidence raises the issue as to whether or not Chas. B. Taylor was alive at the time W. A. Yett, as agent, executed the deed to N. D. McMillan; and that issue should have been submitted to the jury, because if Chas. B. Taylor was not then alive, the deed referred to did not convey his interest in the land.

The evidence also presented the issue as to whether Mrs. Naomi S. Yett signed the power of attorney referred to. It is contended by appellants that, as the defendants answer contained no special plea under oath charging that Mrs. Yett had not signed the power of attorney, that question was not involved; and it was for that reason, perhaps, that the court did not submit that issue to the jury. No doubt, the pleadings will be amended so as to eliminate that objection.

On the other questions presented by the cross-assignments we decide against the appellees.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*