## F. T. GARNER ET AL. V. JOHN T. BOYLE ET AL.

### Decided December 15, 1903.

**1.—Innocent Purchaser—Power of Attorney.**

As against a prior unrecorded trust deed conveying the land to minor children, of which he had no notice, the attorney in fact, after his performance of all the conditions named in the power of attorney, became vested with the interest conveyed to him by such power of attorney, and could hold the same as against the unrecorded deed. Evidence held to establish such a case.

**2.—Same—Conveyance to One Having Notice.**

A purchaser of land for value without notice of existing claims takes it free from such claims, and may convey a perfect title to a subsequent purchaser for value who may be chargeable with notice.

**3.—Same—Payment of Taxes.**

Power of attorney held not to impose upon the grantee therein the payment of taxes due on the land as a condition to the vesting of his interest.

Appeal from the District Court of Harris. Tried below before Hon. Chas. E. Ashe.

*Mark G. Fakes,* for appellant.

*Otto Pape, P. E. McMahan,* and *McKinney & Hill,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by the appellants F. T. Garner, Mrs. Ruby Wyndelts, joined by her husband M. A. Wyndelts, Miss Pearl Garner and Mrs. Annie M. Paschal joined by her husband John S. Paschal, against the appellees John T. Boyle and James McMurry.

The petition alleges in substance that plaintiffs Mrs. Wyndelts and Miss Pearl Garner are the owners in fee of an undivided one-half of the Arthur P. Garner survey of land in San Jacinto County, the metes and bounds of said survey being set out in said petition. It then alleges that on or about the 8th day of July, 1901, the defendant, John T. Boyle, fraudulently procured from plaintiff Mrs. Paschal and her husband a power of attorney authorizing said Boyle to clear the title and recover and take possession of any lands in the State of Texas belonging to the separate estate of Mrs. Paschal, and conveying to him, in consideration of services theretofore rendered and to be rendered by him under said power of attorney, an undivided one-half of any land belonging to Mrs. Paschal which he might recover for her; that prior to the execution of said power of attorney Mrs. Paschal, who then owned an undivided one-half of said Arthur P. Garner survey, conveyed her interest in same to plaintiff F. T. Garner, in trust for the use and benefit of her then minor children, plaintiffs Mrs. Wyndelts and Miss Pearl Garner; that while said conveyance in trust was not recorded in San Jacinto County at the time said power of attorney was executed, the defendants, Boyle and McMurry, both had actual notice of same and understood that said power of attorney was not intended to confer upon Boyle any authority

with reference to the lands included within said conveyance, or to pass to him any interest therein; that notwithstanding said knowledge on the part of the defendants said Boyle, without incurring any expenses or doing anything towards clearing or perfecting the title of Mrs. Garner or her said coplaintiffs in said Arthur P. Garner survey, conveyed to his codefendant an undivided one-fourth interest therein. The prayer of the petition is for a cancellation of said power of attorney and said deed from Boyle to McMurry, for the recovery of the land thereby conveyed to McMurry, and for damages against both defendants for their alleged wrongful acts.

The defendants filed separate answers, and each denied generally and specially the allegations of the petition as to notice of the conveyance from Mrs. Paschal to her children. The defendant McMurry pleaded that he was an innocent purchaser, for value, of the land conveyed to him by Boyle, and prayed that he be protected in said purchase. The defendant Boyle pleaded specially that he had performed all of the conditions required of him under said power of attorney, and thereby became the lawful owner of the undivided one-fourth interest in said land; that he had no knowledge whatever of any outstanding equities against said land or any part thereof; that he had no notice whatever of said trust deed, and in good faith, for a valuable consideration, he conveyed to his codefendant McMurry, of San Jacinto County, Texas, a one-fourth interest in said land; that at the time of said conveyance he had expended large sums of money in and about perfecting the title thereto, and believed himself to be the rightful owner of the interest conveyed. He further alleged that plaintiff Mrs. Paschal exercised ownership over said property, and induced him to believe that she owned the same and had authority to contract with reference thereto, and relying upon her representations he expended money and time in clearing her title to same, and if it should be held, for any reason, that he acquired no right in said lands under said power of attorney, that he has been damaged by the acts of plaintiffs in the sum of $1500, for which he prays judgment, and asks that he have a lien upon the land to secure same; he further prays for equity and general relief.

The cause was tried in the court below without a jury, and judgment rendered in favor of the defendants that plaintiffs take nothing by their suit. From this judgment plaintiffs below prosecute this appeal.

The evidence in the case is practically undisputed except upon the issue of whether the defendants, or either of them, acquired the land claimed by them without notice of the conveyance from Mrs. Paschal to her children. The power of attorney given by Mrs. Paschal and her husband to defendant Boyle is as follows:

"State of Texas, County of Harris. Know all men by these presents: That we, Annie M. Paschal, joined by her husband John S. Paschal, residents of the city of Houston, Harris County, Texas, have made, constituted and appointed, and by these presents do make, constitute and appoint John T. Boyle our true and lawful attorney for us, and in our

name, place and stead, to ask, demand, recover and receive all and any lots, parcels or tracts of land located and situated in any county in the State of Texas, belonging and being the separate property of Annie M. Paschal; and we do hereby authorize our said attorney to institute, in our names, any and all suits that may be necessary to be instituted in that behalf, giving and granting to our said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might, or could do, if personally present, hereby ratifying and confirming whatsoever our said attorney shall and may do by virtue hereof in the premises.

"And we do hereby agree and by this instrument hereby bargain, grant, sell, alien and convey a one-half interest in and to all those certain lots, parcels or tracts of land, located and situated in any county in the State of Texas, belonging to the separate estate of Annie M. Paschal, said interest being transferred and conveyed for the services heretofore rendered and hereafter to be rendered by the said John T. Boyle; it being expressly understood that the said John T. Boyle will personally be responsible and pay all expenses connected with the recovery of said lands.

"Witness our hands at Houston, this the 8th day of July, A. D. 1901.

(Signed)   "JOHN S. PASCHAL,<br>"ANNIE M. PASCHAL."

On July 23, 1895, Mrs. Paschal executed a deed whereby she conveyed to F. T. Garner, in trust for the use and benefit of her children, Mrs. Wyndelts and Miss Pearl Garner, who were both then minors, all of the land owned by her in Polk and San Jacinto counties. At the time this conveyance was executed Mrs. Paschal owned several tracts of land in Polk County and an undivided half interest in the Arthur P. Garner survey in San Jacinto County. It is not definitely shown that this deed was delivered to the trustee or the beneficiaries named therein, but it may be inferred from the evidence that such delivery was made. It was not recorded, however, until June 14, 1902. Each of the defendants swears positively that he never heard of said deed and had no notice of the fact that Mrs. Wyndelts and Miss Garner, or either of them, claimed any interests in the land in controversy until after the defendant Boyle had conveyed the interest acquired by him under said power of attorney to his codefendant, McMurry. As before stated, the evidence upon this issue is conflicting. Mrs. Paschal testified that she told defendant Boyle at the time she gave him the power of attorney, that she had conveyed her Polk and San Jacinto County lands to her children. She is corroborated in this statement by one of her daughters who is not a party to the suit. H. F. Clifford, a son-in-law of Mrs. Paschal, testified that defendant McMurry told him some time before the power of attorney to Boyle was executed that Mrs. Paschal had conveyed the San Jacinto land to her children, and for this reason he would not buy the land from

Clifford, who was trying to sell it for Mrs. Paschal. On the same day that the power of attorney was executed Mrs. Paschal also conveyed to Boyle, by deed, her lands in Polk County which she had previously conveyed to her children. This deed to Boyle was made for the purpose of enabling him to settle claims against the land and sell same for Mrs. Paschal as her attorney in fact. Boyle does not seem to have any definite recollection as to why a deed was executed to this land in addition to the power of attorney, and Mrs. Paschal testifies that she did not know the instrument was a deed, but supposed, when she executed it, that it was a power of attorney. Acting under this deed Boyle compromised all adverse claims to the Polk County lands, and reconveyed to Mrs. Paschal her portion of same which she subsequently sold. It is not shown that she accounted to Mrs. Wyndelts or Miss Garner for the proceeds of the sale of this land.

After the execution of the power of attorney Mrs. Paschal went with Boyle to San Jacinto County to investigate the condition of the Garner survey in that county, and presumably for the purpose of assisting him in clearing the title and making sale of same. Boyle testified that he made several trips from Houston to San Jacinto County for the purpose of getting the title to the land in a marketable condition; that he employed a surveyor and had the survey run out and its lines established; that there were a number of adverse claimants to the land, and he employed an attorney to represent him in procuring releases from said claimants; that he procured said releases and had same recorded, and that the title to said land is now clear. He has not paid the back taxes due on the land because he could never get a statement from the county collector showing what amount was due by Mrs. Paschal. While the power of attorney does not require Boyle to pay taxes that were due on the land he seems to have considered that he was under some kind of obligation to pay same. Since the sale by Boyle to McMurry a suit has been brought, and is now pending, in San Jacinto County, against the unknown owners of a portion of the Arthur P. Garner survey to recover taxes due on said survey from the year 1885 to 1898 inclusive, the amount of taxes and penalties claimed in said suit being $551.87. After having the land surveyed, and procuring the releases above mentioned, Boyle sold and conveyed his interest in same, acquired under said power of attorney, to the defendant McMurry for a cash consideration of $400. This deed from Boyle to McMurry was executed on May 14, 1902. On the 19th day of May, 1902, Mrs. Paschal and her husband executed a power of attorney to her son-in-law, H. F. Clifford, authorizing him to enter upon and take possession of and to mortgage or sell or otherwise dispose of any and all lands in the State of Texas belonging to her. Both Mrs. Paschal and Boyle testify that the power of attorney to him had been revoked, and he expressly disclaims any further rights thereunder.

We think the evidence above stated sustains the judgment of the court below. Conceding for the sake of argument that the power of attorney

from Mrs. Paschal to Boyle was merely an executory contract and vested in him no present interest in the land, if at the time he procured said power of attorney he had no knowledge of the claim of Mrs. Paschal's children under the trust deed, and without any notice of said claim, expended his time and money in performing his part of the contract, after such performance he became vested with an undivided one-half interest in the land and could hold the same as an innocent purchaser for value, against the claim of the children under the unrecorded deed.

The evidence being sufficient to sustain the findings that Boyle had performed his contract under said power of attorney and that he had no notice of the claim of appellees under the unrecorded deed, none of appellants' assignments of error can be sustained.

It is unnecessary to consider the assignments categorically or in detail. It is sufficient to say that while the abstract principles of law invoked by the assignments are correct, all of them are predicated upon the untenable fact theory that the evidence is not sufficient to sustain the findings of the court that the defendant Boyle had no notice of the unrecorded deed and that he performed his part of the contract under the power of attorney from Mrs. Paschal.

It becomes unnecessary for us to determine whether the deed from Boyle to McMurry was merely a quitclaim and therefore would not support the plea of innocent purchaser. Boyle by reason of his ignorance of the claim of plaintiffs under the unrecorded deed having obtained a good title to the land, the title of his vendee would be equally good notwithstanding the fact that such vendee might at the time of his purchase be charged with notice of such claim. Hickman v. Hoffman, 11 Texas Civ. App., 607; 1 Story's Eq. Jur., 400.

In regard to the failure of Boyle to pay the taxes due upon the land, it is sufficient to say that it does not appear from the power of attorney or otherwise that his interest in the land was not to vest until the taxes due thereon had been paid. His undertaking and obligation under said instrument was to recover the land and clear the title to same and this obligation did not require him to pay taxes or any other debt due by Mrs. Paschal for which a lien upon the land might exist. We are of opinion that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.