**KINARD et al. v. SIMS et al.**
No. 3868.

Court of Civil Appeals of Texas. Amarillo.
Sept. 28, 1932.

Rehearing Denied Nov. 9, 1932.

Willis, Studer & Studer, of Pampa, for plaintiffs in error.

Cole & Porter, of Clarendon, for defendants in error.

MARTIN, J.

For convenience, the parties hereto will carry the same designation as in the trial court.

Plaintiffs, Beulah Kinard and others, sued defendant Huselby and others for an undivided one-half interest in a section and a half of land in Wheeler county, describing themselves in the petition as the heirs and all the heirs of their mother, Margaret Sewell, deceased, and alleging that the property sued for was the community estate of their father, John Q. Sewell, and their deceased mother, Margaret Sewell.

The petition is lengthy, and it is unnecessary here to detail further than to say it seems to have sufficiently alleged a cause of action based upon the fraud of their father in selling the premises for the purpose of depriving them of their interest therein, of which all grantees in the line of title had full notice.

Upon the trial a peremptory instruction was given for defendant Mark Huselby; the other defendants having either disclaimed or been dismissed from the suit.

Since the disposition of this case will turn upon the sufficiency of the evidence to show the alleged fraud, we will here repeat the substance of so much of it as illustrates the law question hereafter discussed.

John Q. Sewell and Margaret Sewell, parents of the plaintiffs herein, owned, on September 30, 1915, and prior thereto, as community property, the section and a half of land in controversy, having purchased the

same from defendant Mark Huselby and given as part of the consideration for the payment of same five vendor's lien notes in the sum of $900 each. On the last-mentioned date the mother of plaintiffs, Margaret Sewell, died intestate, leaving eight children, who are plaintiffs herein, seven of whom were minors· at the date of her death, varying in ages at the time from about 3 years to about the age of 22. That thereafter, on May 16, 1916, an extension agreement was entered into by and between John Q. Sewell and the defendant Mark Huselby, in which the last three of the aforesaid series of five vendor's lien notes were extended to October 28, 1919; the first two appearing to have been paid. That prior to this time John Q. Sewell had started community administration proceedings in the county court, but was unable to give bond, and he abandoned same without qualifying. That some time during the fall of 1916 negotiations were begun between John· Q. Sewell and H. J. Willis of Clarendon for an exchange of properties, which was finally consummated by the conveyance from Willis to Sewell of certain properties in Clarendon and by the conveyance from John Q. Sewell to H. J. Willis of the property in controversy, a part of his deed reciting as follows: "That I, John Q. Sewell * * * for myself and as survivor of the community estate of myself and my deceased wife Margaret Sewell, independent of the probate court, for and in consideration of the sum of $12,000.00 paid and assumed to be paid by H. J. Willis * * * as·follows: $9,000.00 cash in hand paid, the receipt of which is hereby acknowledged, and $3,000.00 by the said Willis of the payment of three vendor's lien notes dated October 28, 1908, due three, four, and five years after date respectively, with interest and payable to the order of Mark Huselby, and being the last three of a series of five notes executed by the undersigned John Q. Sewell in part payment for the hereinbelow described lands * * * and for the further consideration that the said Willis shall assume and pay the taxes for the year 1916 now due and payable upon said land."

That at the time of this conveyance the community estate of Sewell and deceased wife owned personal property consisting of cattle, hogs, horses, mules, farming implements, etc., the estimated value of which was about $8,000. That a life insurance policy for $1,000, payable to John Q. Sewell, on the life of Margaret Sewell, had also been collected, and from its proceeds the expenses of her last sickness and her funeral expenses had been paid. That the debt to Mark Huselby, evidenced by said three notes, with about $300 accumulated interest thereon, represented all the community debts owing at the time. That there was, in fact, no cash paid; the $9,000 cash mentioned in the deed being represented by property in Clarendon conveyed to John Q. Sewell in his own name. That his purpose in making this exchange, as testified by him, was to enable him to educate his children.

That thereafter Willis conveyed the Sewell property to one I. Akers, in consideration, among other things, of the assumption on the part of said Akers of the payment of the $3,000 due Huselby as purchase money on the said land. That thereafter the said Akers conveyed to B. M. Shelton the land in controversy for a consideration, in part, of the assumption by Shelton of the same notes to Huselby. That, after the date of the conveyance to Shelton, Huselby made an extension in writing of the time of payment of the notes in question to Shelton, until October 1, 1924. That thereafter Huselby brought suit against Shelton, to which the Sewell heirs were not made parties, upon the said vendor's lien and other notes, which resulted in a compromise, and a deed was executed and delivered to Huselby by Shelton and wife, which contains the following recitation: "For and in consideration of the sum of $12,500.00 to us paid and secured to be paid by Mark Huselby as follows: $1,000.00 cash in hand paid, receipt whereof is hereby acknowledged, and the balance also paid at the delivery of these presents by the surrender and cancellation of all those vendor's lien notes and personal notes held by said Mark Huselby against the said B. M. Shelton fully set out and described in plaintiff's first amended original petition now on file in cause No. 1011, entitled Mark Huselby, vs. B. M. Shelton, et al., in the District Court of Wheeler County, Texas, (this being a compromise of the said suit) and described as follows: three vendor's lien notes for $900.00 each (notes three, four and five) of a series of five made by John Q. Sewell to Mark Huselby of date October 28, 1909, due respectively October 28, 1911, 1912, and 1913, since renewed and extended by agreements numbers one and two."

This deed also describes other notes not necessary here to mention. It ·was further shown that the $1,000 in cash was actually paid; that the compromise agreement had been fully executed and possession delivered, but that there had been no actual physical cancellation and delivery of the three Huselby notes therein described.

These are the major facts upon which the plaintiffs rely for a recovery, except certain testimony of John Q. Sewell and B. M. Shelton, which will be detailed and discussed in the opinion.

■ The right and power of the survivor of the community estate to sell same without administration to pay a community debt has been so long and so ofttimes recognized that it has become a rule of property in Texas no longer open to question, and in support of

which it seems entirely unnecessary to cite authorities. We here call attention, however, to cases where such sales have been upheld where there was an assumption of the payment of a community indebtedness. Morgan v. Lomas (Tex. Civ. App.) 159 S. W. 869; Jones v. Harris (Tex. Civ. App.) 139 S. W. 69; Clemmons v. McDowell (Tex. Com. App.) 12 S.W.(2d) 955.

There is, however, an exception to this well-known rule, under which plaintiffs herein claim the right of recovery. It may be stated in general terms that the exception which was early in our jurisprudence recognized as invalidating such a sale, and which has been referred to many times throughout our judicial history, is the presence and proof of fraud on the part of such survivor in making same, of which his grantee had notice. While such a rule has been ofttimes stated in general terms, there are few, if any, cases in Texas in which it has been given concrete application under a state of facts similar to those claimed to exist in the instant case.

Fraud is a somewhat elusive and shadowy term, the wisdom of defining which in exact terms has been questioned. It has been defined in some cases as "any cunning or artifice used to cheat or deceive another," and it has been said of it that it is synonymous with "bad faith—overreaching and dishonesty." 26 C. J. 1050, 1060.

The burden of proving the existence of facts which give rise to the power to sell community property on the part of the survivor is on the purchaser of same, Moody v. Butler, 63 Tex. 210; while the burden of proving the existence of fraud in such a sale is on the party asserting it, Cage v. Tucker's Heirs, 14 Tex. Civ. App. 316, 37 S. W. 180.

The rule first above announced is recognized by the plaintiffs, apparently, in this case, but the claim is made that sufficient facts and circumstances were introduced in evidence tending to show fraud on the part of the survivor, of which his immediate and remote vendees had notice, to make an issue of fact for the jury's consideration, and the court erred in not submitting this phase of the case to the jury.

The nature of plaintiff's contentions with respect to this question will appear in the discussion below, and we will forego, to conserve space, repeating all of them verbatim.

Among the facts mentioned as tending to prove the presence of fraud was the proof made, without apparent contradiction, that much more than enough personal property was owned by the estate to pay the indebtedness due Huselby, and therefore no reason existed for making a sale of the real estate.

It has been held expressly that the survivor need not exhaust the personalty before selling the real estate. Wenar v. Stenzel, 48 Tex. 484; Davis v. Carter, 55 Tex. Civ. App. 423, 119 S. W. 724. The right of such survivor to sell real estate to pay community debts is not affected by the amount and value of personal property owned by the estate at the time of such sale. Mere errors of judgment will not invalidate the sale. The survivor's power being a general one, the courts may not interfere with his discretion in a matter of this kind. Kirkland v. Oil Investment Co. (Tex. Civ. App.) 41 S.W.(2d) 125; Speer's Law of Marital Rights, §§ 583, 580. Nor is the question affected by the fact that, as in this case, the debt was not yet due at the time of the sale. Rippy v. Harlow, 46 Tex. Civ. App. 52, 101 S. W. 851. Likewise the disproportion between the value of the property sold and the amount of the debt is unimportant, in the absence of fraud. Crawford v. Gibson (Tex. Civ. App.) 203 S. W. 375.

It perhaps is necessary to state in this connection that the record conclusively shows that the consideration received for the property in controversy was adequate and that the value of the Clarendon property was fully equal to the value of the Sewell property received in exchange for it. We also regard the facts as conclusively showing, not only that it was agreed as part of the consideration for the sale of the property in controversy that a community debt was to be paid by the purchaser, but, in fact, that it was paid. A community obligation, being assumed in writing and paid, it results as a matter of law that the conveyance in question was made to pay a community debt, and this regardless of what the survivor's motive was in making the sale. Clemmons v. McDowell (Tex. Com. App.) 12 S.W.(2d) 955; 31 C. J. p. 209. The presumption of good faith attends such sales, Manchaca v. Field, 62 Tex. 135; and it seems hardly necessary to add that the purchaser is not bound by a secret fraudulent intent of the survivor.

This brings us to a discussion of certain phases of Sewell's testimony which, it is claimed, shows such fraud of which his immediate grantee and others in the line of title had notice, as would invalidate the sale, and is the only one that has given us any concern on the question of whether there was a jury issue in this case.

It may be stated as a fact we think that all the grantees in this line of title had such notice of the existence of a community estate and of the facts already discussed as would put them on inquiry, but we do not regard any of the facts already stated as of sufficient cogency to invalidate a sale. The power and right to sell by the survivor cer-

tainly would imply the right to buy by a purchaser, and, since the power to sell springs from and arises out of the existence of community debts and a community status, it would be an entirely illogical holding to say that a state of facts which gave a survivor in community the right to sell would, if known to the purchasers, deprive them of the right to buy. After eliminating the questions already discussed which it is either claimed invalidated the sale or constituted notice, we have left of such facts only the naked proof of a community estate, a community debt, and a conveyance to pay same. The real question in this case is whether the sale was fraudulently made by the survivor with intent to cheat and defraud his children out of the estate, of which the immediate vendee and those claiming under him had notice.

John Q. Sewell testified, in substance, that he had no intention at the time of dividing the Clarendon property with his children, but that he took it in his own name so that he could handle it, and that Willis had knowledge of this. We find, however, he further testified as follows:

"Q. At the time of your conveyance of this land to Mr. Willis, was it your purpose thereby to cheat, swindle or deprive your children, plaintiffs in this case, out of anything justly belonging to them? Answer yes or no. A. No.

"Q. Do you now state that you and Mr. Willis entered into a conspiracy or scheme to beat your children out of their portion of said community estate? Answer yes or no. A. No.

"Q. If you have testified directly or to the fact that you and H. J. Willis entered into a conspiracy or plan for the conveyance of the land by you to Willis for the purpose of defrauding your own children, then tell whether this conspiracy or plan was first suggested by you or by Willis, and also tell exactly what was said either by you or by him when the conspiracy or plan was first suggested. A. There was no conspiracy entered into between H. J. Willis and myself over the sale of this land."

It has ofttimes been held that the purchaser from a survivor in community is under no duty to see to the proper distribution of the purchase money. Sanger v. Moody's Heirs, 60 Tex. 102; Stone v. Jackson, 109 Tex. 385, 210 S. W. 953; Ashe v. Yungst, 65 Tex. 631.

As already stated, practically all the Sewell children were, at the time, minors, and some of them of tender years. The Clarendon property was incapable of partition. We find no testimony in this record that Sewell intended ultimately to defraud his children out of this estate. We do not regard his intention not to partition and divide with minor children property that was incapable of partition as evidencing the fraudulent intent contemplated by law. We find no evidence of any fraudulent conspiracy between Sewell and Willis, and particularly is the record lacking in evidence of a notice of any fraudulent intent by Willis. If Willis had good title, it logically follows that Huselby, who acquired whatever title Willis had, would be protected. We find testimony from both Sewell and Shelton in the record showing that all the grantees knew, in a general way, about the condition of the estate, but, as already indicated, there being community debts and the right to sell on the part of the survivor, the buyer's right could not be affected by these facts which show a right to convey.

We have bottomed this opinion upon both a lack of proof of fraudulent intent on the part of Sewell to permanently deprive the children of the community property when the sale was made, and the lack of notice of such fraud by the purchaser Willis. We say this without regard to the status of the title arising from the fact that the grantee Akers was an innocent purchaser without any notice that would put him on inquiry as to the fraud alleged to exist.

If we are mistaken in our conclusion that Willis was an innocent purchaser and if we concede that the proof is sufficient to show a fraudulent purpose on the part of Sewell to cheat his children out of their inheritance, it would not, under our view of the record, necessitate a reversal, since we believe the evidence wholly insufficient to bring notice of such fraudulent purpose home to the purchaser Akers, who bought for a valuable consideration and had conveyed to him the land from Willis. This would protect appellee Huselby, who purchased the legal title even though he had knowledge of the fraud. The rule has been well stated by Judge Pleasants as follows: "It is equally well settled that, if a subsequent purchaser with notice acquires title from a former purchaser, who bought for value and without notice, such subsequent purchaser succeeds to all the rights of his grantor. When land once becomes freed from equities by a bona fide purchase by one having no notice of the equities, such purchaser obtains a complete jus disponendi, and any one who takes title from him takes it free from said prior equities, notwithstanding he may have notice thereof at the time he buys. Grace v. Wade, 45 Tex. 522; Lewis v. Johnson, 68 Tex. 450, 4 S. W. 644. We think it logically follows from these decisions that the burden upon one asserting an equitable claim against the purchaser of a legal title, who has not purchased directly from the holder of the legal title against whom the equity arose, is not discharged by merely showing that the last purchaser had notice of the equity, but the proof

must go further and show that the land was not free from such equity in the hands of any of the intermediate vendors of said purchaser. This is the holding in the following cases: Peterson v. McCauley (Tex. Civ. App.) 25 S. W. 826; Burleson v. Alvis, 28 Tex. Civ. App. 51, 66 S. W. 235." Thomason et al. v. Berwick, 52 Tex. Civ. App. 153, 113 S. W. 567. See, also, the following authorities: Laffare v. Knight (Tex. Civ. App.) 101 S. W. 1034; Allen v. Anderson & Anderson (Tex. Civ. App.) 96 S. W. 54; Garner v. Boyle, 34 Tex. Civ. App. 42, 77 S. W. 987 (affirmed in 97 Tex. 460, 79 S. W. 1066); Long v. Fields, 31 Tex. Civ. App. 241, 71 S. W. 774; Hickman v. Hoffman, 11 Tex. Civ. App. 605, 33 S. W. 257; Goddard v. Reagan, 8 Tex. Civ. App. 272, 28 S. W. 352; Gulf, C. & S. F. Ry. Co. v. Gill, 5 Tex. Civ. App. 496, 23 S. W. 142.

The judgment is affirmed.