## T. W. EVANS ET AL. v. M. A. TAYLOR ET AL.

### (Case No. 4162.)

1. ESTATES OF DECEDENTS — CLAIMS AGAINST ESTATES.— *The* surviving wife, who takes charge of the community property under the statute, occupies a relation to the estate and creditors similar to that of an independent executor, and her allowance and approval of a claim against the estate gives it no right to payment superior to other claims of the same class.
2. SAME.— If a claim against the community estate is not presented to the surviving wife administering the estate under the statute as survivor, under bond to "faithfully administer" (Pasch. Dig., art. 5494), and before such survivor knows of the claim the estate is exhausted, no right of action exists against her or her sureties. But if she, knowing of the existence of the claim from having approved it, exhausts the estate in discharging debts of the same class, a right of action exists against her and her sureties for a *pro rata* on the claim to which the creditor was entitled.

APPEAL from Lampasas. Tried below before the Hon. W. A. Blackburn.

Thomas W. Evans, Richard C. Gardner, Wm. R. Hutchinson and Wm. B. Milton, composing the firm of Evans, Gardner & Co., of the city and state of New York, as plaintiffs, sued Mrs. M. A. Taylor, surviving wife of D. W. Taylor, and W. W. Smith and Tilford Bean, sureties on her bond as the community survivor. D. W. Taylor had been a merchant in Lampasas. He also owned a considerable number of cattle, and engaged in buying and selling cattle. He died in August, 1872, and in October, 1872, his wife, M. A. Taylor, filed with the district clerk an inventory of the community estate, and her bond in the sum of $9,292.30, with the other two defendants as her sureties. D. W. Taylor had purchased goods of plaintiffs to the amount of $512, in 1872.

In August, 1873, plaintiffs presented their account to M. A. Taylor, duly sworn to, and it was allowed by her as a valid claim against the community estate. In September the claim was filed with the clerk and approved by the district judge.

Plaintiffs alleged that the community estate was amply sufficient to pay all its just debts, and that they, relying on the honesty and integrity of Mrs. Taylor, did not seek to enforce their claim by the usual legal remedies. Prayer for judgment against defendants, etc. The plaintiffs charge that Mrs. Taylor had wasted the community estate and had not paid any part of their claim.

September 26, 1877, defendants answered by a general demurrer and special exception that the petition did not show any property received or squandered by Mrs. Taylor; that the allega-

tions were vague and indefinite and showed no cause of action against the sureties. They filed a general denial, alleged that Mrs. Taylor had fully administered all the assets which had come to her hands, that the value of the assets which had come to her hands was not equal to the amount of the debts of the community paid by her — wherefore the liability on her bond had been fully met; that the district court had set apart to her, for the use of the family, property amounting to $1,060.50, which should be credited on the bond.

Plaintiffs filed a supplemental petition, excepting to the answer for that it did not show to what debts the alleged payments had been applied; also excepting to the allowance made to Mrs. Taylor of $1,060.50 as illegal, she having entire control of the property, and not being entitled to the allowance.

Plaintiffs renewed the charge of misapplication of the assets by Mrs. Taylor, and alleged that she had wasted the estate and had not applied the assets to the payment of "legally authenticated claims;" that the pretended claims alleged to have been paid by her were not allowed or approved, and were paid fraudulently and in collusion with the parties who held them. That none of these claims having been approved by the court, the payments upon them were misapplications of the funds of the estate.

November 14, 1879, defendants, by amendment, renewed the allegations of their former answer. They annex a report which had been filed by Mrs. Taylor, showing payments made by her; which report had been destroyed by fire. They also allege that she had paid debts of the community, amounting to $5,000, which were not contained in the report and for which she had no corresponding vouchers, and prayed that she be permitted to make proof of those payments at the trial.

Smith, one of the sureties, had died, and his representatives had been brought in by *scire facias*. Those of the heirs who were not minors — protesting against being held to answer — adopted the answer of Mrs. Taylor.

The cause was submitted to the court without a jury, November 21, 1879, and judgment rendered for defendants.

On the trial the plaintiffs presented their account for $512 (sworn to). It was allowed by Mrs. Taylor August 27, 1873. Approved September 13, 1873.

2d. The bond of Mrs. Taylor and the sureties.

3d. Proved the death of D. W. Taylor, that he had no separate property, and the death of Smith, one of the sureties.

Statement of the case.

4th. The inventory and appraisement, showing property to the amount of $9,292.30, and community debts amounting to $1,492.60.

5th. Proved by Mrs. Taylor that the claim of plaintiffs was just and unpaid, and that there was no separate property.

6th. Proved that since the death of Smith, one of the sureties, his wife had been brought in by *scire facias*.

7th. That the note to Embree & Keys for $2,436.45 was paid in Kansas, from the proceeds of cattle not inventoried, by Mrs. Taylor.

8th. That there was stock sold in Kansas (of the community), to pay debts in Texas; that the debt to Embree & Keys for $2,436.45 was so paid; that the inventoried community cattle in Kansas brought $15,000 or $16,000. Taylor had paid G. W. Shanklin money before his death upon the sale of cattle. Taylor had money deposited with Embree, and, before his death, drew $2,000, stating that it was to pay the balance he owed G. W. Shanklin. Taylor had told the witness (Embree) that he intended to start his son Harry in business when he sold his cattle in Kansas. That Taylor was an honest man.

The defendants introduced vouchers, numbered 1 to 26, showing the payments by Mrs. Taylor. Of these vouchers, those numbered 3, 4, 5, 6, 7, 8 and 26 were for moneys paid to G. W. Shanklin.

The plaintiff objected to the most of these, because the claims were not allowed and approved.

Mrs. Taylor testified that she had paid out all the assets that had come to her hands, and explained some of the payments made by her.

The plaintiffs in their bill of exceptions base their objections to the vouchers Nos. 1–26, first, because the claims were not legally proven up and allowed. Second, because they were not approved by a competent court, and because some of them appeared to be duplicates.

They objected to the testimony of Mrs. Taylor, first, because the vouchers were the best evidence. Second, because she had paid no part of plaintiffs' claim.

The court in signing the bill of exceptions stated that the vouchers were proved by Mrs. Taylor to be genuine, and that she had paid the amounts mentioned upon just claims against the community estate.

The opinion sufficiently indicates the errors assigned.

*White & Gibson*, for appellant.

*A. W. Terrell*, for appellee.

DELANY, J. COM. APP.— Counsel for appellants insists that the surviving husband or wife, who takes charge of the community estate under the statute, cannot lawfully pay any claim against the estate, unless it has been allowed and approved.

We cannot assent to this proposition. The survivor occupies a position like that of an independent executor, and the allowance and approval of a claim in such a case does not give it any superiority over other claims of the same class. McLane v. Belvin, 47 Tex., 493.

But the presentation and allowance of the claim had one effect, at least. It informed Mrs. Taylor of its existence as a valid claim, and it was allowed by her as such, before she had made any considerable progress in the settlement of the estate. And when this is considered, in connection with the further fact that Mrs. Taylor had filed an inventory of property amounting to nearly $10,000, and a schedule of indebtedness amounting to less than $1,500, it is reasonable to suppose that the creditor may thus have been thrown off his guard, and rendered less vigilant in pressing his claim for payment.

The condition of Mrs. Taylor's bond, with which we are now concerned, was that she should "faithfully administer the estate." Pasch. Dig., art. 5494.

One of her duties in this administration was to pay the debts of the community, to the extent of the common property. And if the estate was insolvent, it would seem, in analogy to an ordinary administration, that she should pay them *pro rata*. To pay out all the assets to one creditor, or to one class of creditors, and send others away empty, would hardly comport with her duty to "faithfully administer the estate."

It was held in Green v. Raymond, 58 Tex., 80, that where a creditor failed to present his claim until the surviving wife had exhausted the property in the payment of debts, he could not hold her and her sureties responsible upon the bond.

But in this case the claim had been promptly presented, and upon the trial it was admitted to be a just claim against the estate.

In our opinion the plaintiffs are entitled to have their claim paid *pro rata*, and, as this was not done, the sureties upon the bond are liable to that extent.

The judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted November 13, 1883.]