EMMETT RIPPY ET AL. v. C. J. HARLOW ET AL.

Decided April 6, 1907.

**1.—Guardian's Deed—Invalid.**

A deed by a guardian is of no effect in the absence of evidence of an order of the Probate Court directing the guardian to sell the land, or of a sale and confirmation thereof.

**2.—Sale of Community Land by Survivor.**

A surviving husband has the right to sell community land to pay community debts.

**3.—Deed by Guardian Valid as Survivor's Deed.**

A deed to community land executed by a surviving husband, although purporting to have been executed by him in his capacity as guardian of his minor children, considered and held sufficient to convey the title of the survivor and of the children of himself and his deceased wife, the deed reciting and it otherwise appearing that the conveyance was made for the purpose of paying a community debt.

**4.—Community Debt—Changes of Form.**

The fact that the form of a community debt passes through several mutations does not change or destroy its character as a community debt, and a surviving husband has the right to convey community property to pay the same although such debt in its last form of renewal was not due at the time of conveyance.

**5.—Case Distinguished.**

The case of Stone v. Sledge, 87 Texas, 49, distinguished from the present case.

**6.—Vendee—Specific Performance.**

When a party purchases community land from a surviving husband and as a part of the consideration discharges a community debt, takes possession of the land and makes permanent and valuable improvements thereon in good faith, he may enforce specific performance of the contract of sale, not only against the husband but also against the heirs of the deceased wife.

Appeal from the District Court of Hunt County. Tried below before Hon. T. D. Montrose.

*Bird & Parham, S. W. Tenley* and *Neyland & Neyland,* for appellants.—A deed in writing to land, conveys only the interest of the person named as grantor therein and does not convey the interest of the person who is not named in the instrument, but who signs and acknowledges it. Stone v. Sledge, 87 Texas, 49; Barnett v. Houston, 18 Texas Civ. App., 134.

A surviving spouse cannot make a valid conveyance to community property to pay a debt or debts which were not due at the time of the conveyance.

*Perkins & Craddock,* for appellees.

TALBOT, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by appellants in the usual form of such action, against the appellees to recover a one-half interest in the land described in the petition, alleging that said land was the community property of their father and mother, J. M. Rippy and Ella Rippy, the latter having died in June, 1889, and leaving appellants as her sole heirs at law. Defendant Harlow pleaded not guilty, the statutes of limitation of three, five and ten years, and a special answer, the nature of which will be sufficiently indicated by the trial court's findings of fact adopted by this court, (there being no statement of facts sent up) as follows:

"The defendants, J. M. Rippy, and Ella Rash, the father and mother

of the plaintiffs, were married in Hunt County, Texas, in the year 1876, and that Mrs. Ella Rippy died in Hopkins County, Texas, on the sixth day of June, A. D. 1889, leaving surviving her the defendant, J. M. Rippy and the plaintiffs herein, and a son, Edgar Rippy, who died in the year 1900, unmarried, leaving his father J. M. Rippy and the plaintiffs herein as his sole surviving heirs. No administration was had on the estate of the said Mrs. Ella Rippy. By general warranty deed, dated the twenty-ninth day of October, 1888, J. F. Stewart and wife conveyed the premises in controversy to the defendant, J. M. Rippy. The consideration recited in said deed was six hundred and eleven dollars ($611) paid and one note for $152 due November 1, 1889; one note for $143 due November 1, 1890; one note for $100 due November 1, 1890, and one note for $244 due November 1, 1891, each of said notes drawing ten per cent interest, and the said deed reserved an express lien to secure the payment thereof. The said defendant, J. M. Rippy, never paid either of said notes or any part thereof save and except payments credited on the said $152 note as follows:—$20 November 5, 1889; $70 November 22, 1889; $15 February 27, 1892. The said J. F. Stewart transferred said notes and the following parties became the holders thereof: viz:—T. H. King, Jno. W. Randall, R. W. Harris and W. T. A. Kennedy. On the 23d day of May, 1892, the holders of said notes brought suit thereon in the District Court of Hunt County, in cause No. 3199 against the said defendant, J. M. Rippy, and to foreclose the lien on the premises described in the plaintiff's petition, retained in the said deed from said J. F. Stewart and wife to the defendant J. M. Rippy, and on the 27th day of June, 1892, judgment by default was rendered against J. M. Rippy in favor of the said plaintiffs in the following amounts: viz: T. H. King, $195; J. W. Randall, $122.11; R. W. Harris, $136.50; W. T. A. Kennedy, $83.10, and cost of suit and foreclosing the said lien and directed that the said premises be sold in satisfaction of the judgment. On October 18, 1892, the said defendant J. M. Rippy executed and delivered to the New England Loan and Trust Company, the following instruments: (1) First Mortgage Bond for $550 to become due November 1, 1897, payable at the office of the said company in Des Moines, Iowa, and bearing interest at the rate of six per cent. per annum, payable semi-annually at the office of the said company according to the terms of interest coupons attached to the said bond. Said instrument further provides that if any interest should not be paid within twenty days after due, the whole of said indebtedness, should at the option of the holder thereof, without notice, become due at once and bear interest at the rate of ten per cent. per annum from the date of said default, and in case of suit for collection of the principal and interest that the said Rippy would pay a reasonable attorney's fee. (2) One note for $110.86, payable in ten installments, said installments maturing on the first day of May and on the first day of November. (3) Deed in trust with power of sale on the premises described in plaintiff's petition, to secure said $550 first mortgage bond. Said deed of trust reciting that the note secured thereby was for the purchase money of the land described, the same being a lien thereon, and that said note was a renewal of a certain judgment for

$536 in cause No. 3199 in the District Court of Hunt County, which judgment was a foreclosure of certain notes executed by J. M. Rippy to J. F. Stewart, in part payment of the purchase money for the land described, and that the New England Loan and Trust Company was subrogated to all the rights and equities of the original holders and owners of said judgment. (4) Second deed in trust on the same premises to secure the said installment note. By an instrument dated the 5th day of November, 1892, the plaintiffs in said judgment, to-wit: T. H. King and others, transferred the said judgment to the New England Loan and Trust Company."

On the seventeenth day of January, 1890, the defendant, J. M. Rippy, filed an application in the County Court of Hopkins County, asking to be appointed guardian of the estate of the said children of himself and his deceased wife Ella, in which he recited that the said children were named and their ages were as follows: Mila Rippy, eleven years old; Edgar Rippy, nine years old; Emmett Rippy, five years old and Dexter Rippy, one year old. The said application further stated that at the time of the death of his wife Ella, that she was seized in her separate right of a one-seventh undivided interest in and to the homestead of Nathan and Elizabeth Rash, located in the town of Black Jack Grove, Hopkins County, Texas, and her said interest therein was of the probable value of $75. Said application made no reference to the premises in controversy in this suit, and although commissioners were appointed to appraise the estate of said minors, no inventory of their estate was ever returned. On December 5, 1890, the defendant, J. M. Rippy, filed bonds in the sum of $150 payable to each one of his said children, as guardian of their said estate, and took oath as guardian of said estate, and said bonds were approved by the County Judge on the date that they were filed. On the same date, to-wit: December 5, 1890, the said defendant, J. M. Rippy, filed an application in the said County Court of Hopkins County, praying for an order to sell the one-seventh interest of his wards in the said homestead of the said Nathan and Elizabeth Rash, situated in the said town of Black Jack Grove, at private sale. Said application recites that it was necessary to sell the interest of the said wards in the said premises for their education and maintenance, and that there was no personal property belonging to their estate. The clerk of the court issued notice on this application under date of December 20, 1890. The evidence, however, failed to show whether said application was granted or whether an order to sell was issued or whether any report of sale was ever made and approved by the County Court of Hopkins County. On February 9, 1896, the said defendant, J. M. Rippy, filed in said guardianship proceedings, what was termed an annual account with the estate of the said wards had a one-half interest in the land described in plaintiff's petition. That there was no personal property belonging to said wards; that there were no claims due them and no claims against their said estate. In the said account, the said Rippy charged himself with one-half of the proceeds of sale of the one-half interest in the said land in Black Jack Grove, fifty dollars; and shows disbursements as follows: court cost, $8.75; attorney's fees, $10; cash paid Dr. Smith medical bill, $15.25; cash paid for books

and tuition, $13; cash on hand, $3. On the 10th day of March, 1896, the said J. M. Rippy filed a report of sale in the said County Court of Hopkins County, verified by his affidavit, in which he sets forth: "That in obedience to an order of this Court, made and entered in said guardianship on the ninth day of March, 1896, he sold to C. J. Harlow at private sale in accordance with his application made for an order to sell the land belonging in part to the minors, that said guardian sold to the said C. J. Harlow, one hundred acres of land, the same being situated in Hunt County, Texas, and being a part of the Needham Boone headright survey" (same premises in controversy in this suit), and also recites that the said sale was made for the sum of $1,200; $600 cash; one note for $100 due November 15, 1896, and the assumption of $500 debt due to the New England Loan and Trust Company, which said company had a matured mortgage lien on said land for $500 and which the said purchaser assumed the payment of and released the guardian from the payment of said mortgage. The following endorsements were made by the then county judge of Hopkins County on said report of sale. 'March 21, Continued R. B. Keasler, County Judge.' 'September 21, Continued R. B. Keasler, County Judge.' 'December 20, 1897, refused R. B. Keasler, County Judge.'

"On April 3, 1896, the said defendant, J. M. Rippy, filed in the said County Court of Hopkins County, an application for an order to sell the land in controversy in this suit. He sets forth in said application that it was necessary to sell the one-half interest in the said premises belonging to the said wards, for their support, education and maintenance. That there was no personal property belonging to the said wards estate, and the proceeds from the sale of the lot and prayed to be sold, was necessary therefore, and referred to a sworn exhibit attached to his application as showing more fully the necessity for said sale. Notice issued on said application on the fourth of April, 1896, but there was nothing from which I could determine whether any action was ever taken by the said County Court of said county on said application.

"On March 17, 1896, the defendant, J. M. Rippy, conveyed the land described in plaintiff's petition to the defendant, C. J. Harlow, by warranty deed, which deed is of record in Book 91, page 83, Hunt County Records of Deeds and is as follows:

"'The State of Texas:
County of Hopkins:
Whereas by an order of the County Court in and for the County of Hopkins aforesaid made at the March Term, A. D. 1896, of said Court directing the sale of the hereinafter mentioned land belonging to the estate of Mila Rippy, Emmett Rippy, Edgar Rippy and Dexter Rippy, minors, James M. Rippy, guardian of said minors, did on the 10th day of March, A. D. 1896, sell to C. J. Harlow at private sale for twelve hundred dollars as follows: five hundred and fifty due the New England Loan and Trust Company, the said C. J. Harlow assuming the payment of said sum both principal and interest according to face and tenor of said notes, and two certain vendors lien notes fifty dollars each bearing even date herewith 10 per cent. per annum

from date and due January 1, 1897, with a vendors lien retained on said land and five hundred and fifty dollars cash in hand paid the receipt of which is hereby acknowledged.

" 'And whereas the account of said sale having been returned to said court was at the March term, 1896, of said Court (to-wit) on the 16th day of March, 1896, in all confirmed.

" 'Now, therefore in consideration of the premises and the full and final payment of said sum of twelve hundred dollars, the receipt of which is hereby acknowledged, I, James Rippy, guardian, as aforesaid have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey to the said C. J. Harlow all that certain tract or parcel of land described as follows, (to wit); being and situated in Hunt County, Texas, on the waters of South Sulphur and being a part of the headright survey of Needham Boone and beginning at the N. E. corner of a 320 acre survey out of said Boone headright formerly sold by W. W. and W. H. Barker to John Stewart. Thence S. 533 84-100 varas to a stake on E. B. line of said 320 acres and the S. E. corner of Blk. No. 2 of said subdivision; thence West 1060 varas to a stake on S. B. line of said Blk. No. 2. Thence N. 533 84-100 varas to the place of beginning. Containing one hundred acres of land, to have and to hold unto him the said C. J. Harlow, his heirs and assigns forever and I do hereby bind myself, my heirs, executors, administrators to warrant and forever defend all and singular the said premises against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Witness my hand this 17th day of March, 1896.

J. M. Rippy, for himself.<br>J. M. Rippy, Guardian.'

" 'The State of Texas:
County of Hopkins:

Before me, J. W. Barker, a Notary Public in and for Hopkins County, Texas, on this day personally appeared J. M. Rippy known to me to be the person whose name is subscribed to the above and foregoing deed and acknowledged to me that he had executed the same for the purpose and consideration and in the capacity therein stated.

Given under my hand and seal of office this 17th day of March, 1896.

J. W. Barker,

(Seal)                          Notary Public, H. C., Texas.

'Filed for record the 5th day of January, 1897, at 10:45 o'clock A. M. Recorded the 5th day of January, 1897, at 1:15 P. M.

W. C. Stevenson, County Clerk,<br>Hunt County, Texas.'

"The defendant C. J. Harlow assumed the said obligation of the said J. M. Rippy to the said New England Loan and Trust Company, and paid the interest thereafter falling due on the maturity, and paid the debt in full when it fell due; the total amount so paid by said Harlow to said New England Loan and Trust Company; the said Harlow also paid said J. M. Rippy at the time of the execution of said deed, the sum of $650 which payment was made in mules, wagon,

horse and cash. Upon the execution of said deed by the said Rippy, the defendant, C. J. Harlow, went into the possession of the premises in controversy in this suit, and has had continuous possession thereof ever since claiming title thereto and paying all taxes due thereon, and has had peaceable possession thereof cultivating, using and enjoying the same up to the time of the institution of this suit; that he in good faith, made valuable and permanent improvements on the said premises, the description and the value being as set forth in his amended original answer herein. The plaintiffs, Mila Weaver and L. H. Weaver were married in Hunt County, Texas, on the twenty-first of November, 1897. The said debt owing by the said defendant, J. M. Rippy, at the time he executed the deed to the defendant, C. J. Harlow, was community debt for the defendant J. M. Rippy and his deceased wife, Ella, and was owing for a part of the purchase money of the premises in controversy. That it was the intention of the defendant, J. M. Rippy, to sell and convey to the defendant, Harlow, his interest in the premises in controversy, as well as the interest of the plaintiffs, and the defendant C. J. Harlow intended and thought he was buying the entire one hundred acres, and believing that he had good title thereto, and the amount he paid therefor was the fair, cash market value of the entire one hundred acres at the time Rippy executed the said deed, and at the time that Harlow went into the possession thereof. Three hundred dollars per annum is the fair rental value of the said premises; the said one hundred acres of land without reference to the improvements thereon, is worth fifteen hundred dollars at this time. The plaintiff Emmett Rippy was twenty-two years of age in June of the present year and the plaintiff Dexter Rippy is not yet twenty-one years of age. At the time the said J. M. Rippy conveyed the premises in controversy to the defendant C. J. Harlow, the said Rippy had no other means of his own, which could have been applied to the payment of said debt or any part thereof."

The record shows no answer by appellee Yancy, but the judgment recites that he appeared by attorney. Upon a trial without a jury the court rendered judgment for appellees and appellants have appealed.

Appellants have presented but two assignments of error, and contend, in effect, that it is manifest from the language of the deed from J. M. Rippy to appellee Harlow purporting to convey the land in controversy to said Harlow, that the grantor's intention was to convey only as the guardian of appellants, and that said deed was void because it does not appear that an order of the Probate Court authorizing the sale of said land was ever made, and it does appear that the report of the sale thereof to appellee Harlow was rejected and not approved by said court; that said deed cannot be regarded as a conveyance of the said J. M. Rippy in his own right or as the survivor of the community to pay community debts, because it does not use apt and proper words to accomplish either of such purposes, and because no community debt was proven to be due when the sale was made.

We think it quite clear under the evidence adduced, that is, in the absence of any proof that the County Court, in which the guardianship was pending, had made an order directing the said Rippy

as guardian of appellants to sell said land, or a sale and confirmation thereof by said court, and in view of the undisputed evidence that the report of the sale to appellee Harlow was disaffirmed by said County Court, J. M. Rippy did not have authority as the guardian of appellants to convey their interest in the land. But to the proposition that the deed in question was insufficient to convey the interest of appellants and the said Rippy for the purpose of paying the community debts of himself and his deceased wife, under whom appellants claim by inheritance, we are unwilling to subscribe. That the surviving husband has the power to sell community property to pay community debts, and that sales fairly made by him for that purpose cannot be disturbed by the heirs of the deceased wife, is too well settled to admit of argument, or require the citation of authorities. It is not denied that the property involved in this suit was the community property of J. M. Rippy and his wife. Nor is the fact that the debt, assumed by appellee Harlow and paid by him as the major part of the consideration for the purchase of said land, was the community debt, questioned. Not only was this debt a community debt of J. M. Rippy and his wife, but it was originally incurred by them in the purchase of said land from J. F. Stewart in 1888, to secure which an express vendor's lien was retained on the land and subsequently foreclosed in a suit on said debt. The contracts entered into between J. M. Rippy and the New England Loan and Trust Company after said company became the owner of the foreclosure judgment did not change or destroy its character as a community debt of said Rippy and wife, and the fact that said debt by reason of the terms of said contracts was not payable at the time of the conveyance to appellee Harlow, would not deprive the said Rippy of the right as survivor to sell the land for the purpose of paying it.

In support of the contention that the deed from J. M. Rippy to Harlow does not have the effect of conveying the land in suit to pay a community debt of said Rippy and his deceased wife, we are cited to the case of Stone, et al, v. Sledge, et al, 87 Texas, 49. In that case the husband had sold the separate lands of the wife and his name alone appeared in the deed as grantor. Some time after the execution of the deed the wife signed and acknowledged it and the question arose whether or not she was bound by the conveyance, although she did not appear upon its face to be party to it. In the discussion the Supreme Court of this State recognized the conflict of authority upon the question, but adhered to that rule which holds such a deed inoperative, as being supported by the better reason as well as the weight of authority. The court said: "When the title is in one person, and the consent of another is essential under the law to convey such title, and such other signs the deed, his name not appearing therein as a grantor, the signature, it would seem, would merely manifest his consent to the conveyance.—The wife's signature to the instrument under consideration does tend to show her consent to her husband's conveyance of the land, but that is a very different thing from manifesting a purpose to convey her own interest." But we think that case and those cited to the same effect are distinguished from a case like the present. Here the party signing the deed has an interest

in his own right to convey and has the power to convey the interest of appellants for the purpose for which he did convey. The deed is not in the usual form employed by one conveying in his official capacity only, but is in the main a general warranty deed in the form prescribed by our statute. J. M. Rippy appears upon its face as the grantor therein and he uses language amply sufficient to convey his own interest, and, as the survivor of the community, the interest of appellants. It is true the deed recites that "whereas, by an order of the County Court, etc., James Rippy, guardian, etc., did on the 10th day of March, A. D. 1896, sell to C. J. Harlow, etc., and that an account of said sale was returned to the County Court and confirmed;" yet, inasmuch as it was the manifest purpose of the said Rippy to sell the land to pay a community debt the fact that said recitals were not true would not render the deed inoperative for the purpose intended.

Again, appellee Harlow, at the date of his purchase from J. M. Rippy took actual possession of the land in controversy, which he has since held, and made permanent and valuable improvements upon it. Ordinarily this would entitle him to a specific performance and a divestiture of the title out of the vendor, and we are unable to see any good reason why the rule should not apply in a case like this. J. M. Rippy, in his own right, and as the survivor of the marital partnership, was as fully authorized and empowered to sell the land sued for herein to pay community debts, as if he had been the absolute and sole owner thereof. He did sell it to Harlow for that purpose, and placed him in possession. Harlow paid the community debt and in good faith made permanent improvements upon the land of the reasonable value of four hundred dollars. These facts were specifically pleaded, and, in accordance with his prayer, we hold that appellee was entitled to have his title declared to be superior to any claim of appellants, and that the proper judgment was rendered in the court below. That judgment is, therefore, in all things affirmed.

*Affirmed.*

Writ of error refused.