### MORGAN v. LOMAS.

(Court of Civil Appeals of Texas. Amarillo. June 7, 1913. Rehearing Denied Oct. 11, 1913.)

1. APPEAL AND ERROR (§ 736*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error must not be multifarious.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. § 736.*]

2. APPEAL AND ERROR (§ 757*)—BRIEFS—SUFFICIENCY.

The practice of setting out a synopsis of the pleadings and evidence under the statement of the nature and result of the suit, and thereafter referring the court thereto in a general manner in support of a proposition, is bad.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3092; Dec. Dig. § 757.*]

3. APPEAL AND ERROR (§ 757*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Notwithstanding such gross violation of the rules for briefs, fundamental errors will be considered, although not properly assigned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3092; Dec. Dig. § 757.*]

4. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY—POWER OF HUSBAND TO CONVEY.

A surviving husband may convey the community estate in payment of the community debts, this right extending even to the homestead and authorizing a conveyance, although the pro-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ceeds realized from the sale are greatly in excess of the debts, and the purchaser not being bound to see to their application.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

5. HUSBAND AND WIFE (§ 273*)—COMMUNITY ESTATE—CONVEYANCE BY SURVIVING HUSBAND.

Where most of the purchase money due the state upon land, which constituted the community estate of a couple, was still unpaid, and the husband after the death of his wife conveyed his undivided one-half to the woman he afterwards married, he may thereafter, in connection with her, convey the whole of the land to one who would assume the payment of the unpaid purchase money, as there was no assumption of payment upon the first conveyance, and the second relieved the husband of the payment of a community debt; this being true even though the value of the property was greatly in excess of the community debt and notwithstanding the fact that a child of the first marriage had inherited his mother's undivided one-half interest in the property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

Appeal from District Court, Donley County; J. N. Browning, Judge.

Suit to quiet title by W. C. Morgan, as executor, against Frederick Lomas. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

A. T. Cole, of Clarendon, for appellant. Madden, Trulove & Kimbrough, of Amarillo, for appellee.

HALL, J. Appellant, as executor of the will of his wife, filed this suit against appellee to quiet the title to section 30, block C—6, state school lands in Donley county. William Allen, as an actual settler, became the purchaser of this land from the state at $2 per acre October 15, 1885. By deed dated January 23, 1886, Allen and wife conveyed the land to William Lomas for a recited consideration of $40 paid and the assumption by William Lomas of Allen's obligation to the state. November 12, 1887, William Lomas and wife conveyed the section to their son, Joseph W. Lomas, in consideration of his assumption of the obligation to the state. At the date of this conveyance, Ida Lomas was the wife of Jos. W. Lomas. She died in January, 1889, leaving as her only child the appellee, Frederick Lomas, who was born in 1888. Mrs. Ida Lomas died intestate. Thereafter, and while Jos. Lomas was a widower, on the 17th day of December, 1891, he conveyed to Miss Minnie Mortson an undivided half interest in said land by an instrument, the material recitals of which are as follows: "In consideration of the sum of $1 to me in hand paid by Miss Minnie Mortson, of the county of York and province of Ontario, the receipt of which is hereby acknowledged, do by these presents bargain, sell, release and forever quitclaim unto the said Miss Minnie M. Mortson, her heirs and assigns.

all my right, title and interest in and to that certain tract or parcel of land lying in the county of Donley, state of Texas, described as follows, to wit: All my undivided one-half interest in and to survey No. 30, block C—6, in Donley county, Texas, etc. To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances to the same in any manner belonging unto the said Miss Minnie M. Mortson, her heirs and assigns forever, so that neither I, the said Joseph W. Lomas, nor my heirs nor any person or persons claiming under me, shall at any time hereafter have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof." This deed was forthwith filed and recorded in the deed records of Donley county prior to the purchase by W. C. Morgan for his wife, Mrs. Callie Morgan. On the 17th day of August, 1897, Joseph Lomas and Minnie Mortson, who in the meantime had intermarried, joining as husband and wife, in consideration of $1,920 paid to the wife, conveyed the entire section of land and all their rights thereunder to Mrs. Callie Morgan, wife of appellant. This deed did not recite the assumption by Mrs. Morgan of the payment of the $39/40$ of the purchase price due the state, but the statement of facts shows that part of the consideration was the assumption of the obligation held by the state of Texas. These are the material facts necessary to be stated at this time.

[1-3] Appellant's brief is attacked by appellee upon the ground that the single assignment is multifarious and defectively briefed. The objections made to it are well taken. The assignment is multifarious, and there are no references to the record except this one found in the argument, following the propositions, "See statement of facts, 1 to 14," which is too general to invoke our consideration. The practice of setting out a synopsis of the pleadings and evidence under the statement of the nature and result of the suit and thereafter referring this court thereto in a general way, in support of the propositions in the brief, has often been condemned. Peach River Lumber Co. v. Ayers, 41 Tex. Civ. App. 334, 91 S. W. 387; Gammon v. Sigel, 43 Tex. Civ. App. 199, 95 S. W. 730. However, fundamental error is suggested, and, notwithstanding the gross violation of the rules by appellant's brief, we have reviewed the record.

By an able brief appellee insists that appellant was not an innocent purchaser for value, in good faith, for the reason that the recitals in the deed from Jos. W. Lomas to Miss Minnie Mortson were sufficient notice to appellant of the rights of appellee and for the further reason that this deed was only a quitclaim and would not support the plea of innocent purchaser. Since the

Supreme Court has granted a writ of error in the case of Schmittou v. Dunham, 142 S. W. 941, this writer confesses his inability to determine what is a quitclaim deed, and, until that case has been finally passed upon by the Supreme Court, he declines to construe all instruments of that nature unless absolutely necessary to a disposition of the case under consideration, and in our opinion the matter is not of vital importance in the decision of this appeal. Nor do we think the question of bona fide purchaser is conclusive of the issues submitted for our consideration. We admit that the recitals in the deed from Joseph W. Lomas to Minnie Mortson were sufficient to give notice to appellant that she bought only an undivided half interest in the entire section, that it put appellant upon notice that the remaining undivided half interest was in some one claiming under Joseph W. Lomas, in whom the legal title to the entire section had been vested by the deed from his mother and father; and in our opinion we may further admit that the effect of this deed was to notify appellant that the remaining undivided half interest not conveyed by Joseph W. Lomas had descended to appellee as the heir of his mother, Mrs. Ida Lomas; and we can further admit that inquiry might easily have revealed the fact to appellant that Frederick Lomas was an infant at the time of his mother's death, that the probate records showed his half interest to be listed in the guardianship proceedings, and that his father had made no effort to convey that interest to any one; yet we cannot subscribe to the contention of appellant that the trial judge was correct in directing a verdict for appellee.

[4, 5] The power of the surviving husband to convey community estate in payment of community debts is too well settled to require the citation of many authorities, and this right exists even where a guardianship is pending or with administration, and the right has been extended by the decisions of our Supreme Court to include the homestead of the family as it existed at the death of the wife (Dawson v. Holt, 44 Tex. 174; Ashe v. Yungst, 65 Tex. 631; Watts v. Miller, 76 Tex. 13, 13 S. W. 16); and it is further held in a number of cases that, although the proceeds realized from a sale are greatly in excess of the debt which the sale was made to satisfy or pay, yet the sale is valid (Watkins v. Hall, 57 Tex. 3; Jones v. Harris, 139 S. W. 69). The case last cited is authority for the doctrine that the surviving husband may sell the homestead to pay community debts and deprive minor children of their rights, even though the estate is insolvent, and that the purchaser need not see that the purchase money is appropriated to the payment of such debts. The case last cited seems to be upon all fours with the instant case in that the land which was sold therein was purchased from the state and part of the indebtedness existing against the community was due the state as unpaid purchase money. The fact that there are two opinions by Judge Fly, speaking for the majority, and two dissenting opinions by Judge Neil, in that case, and the further fact that a writ of error was denied by the Supreme Court, encourages us to rest the decision of this case almost entirely upon it. The contentions of appellee herein are ably and earnestly championed by Judge Neil in the two dissenting opinions filed by him. As bearing directly upon the instant case, we quote from the majority opinion by Judge Fly as follows: "Under the terms of the contract of W. J. Jones, he was to pay the state $780, with 5 per cent. interest thereon and 1/40 of the principal to be paid annually. It was like any other debt, except that it was made the duty of the Commissioner, in case of a failure to meet a payment, to forfeit the land to the state without the necessity of re-entry or judicial ascertainment, and, even in a case where there was a failure to pay the interest and part of the principal at the appointed time, if there was no forfeiture there was a penalty of 20 per cent. We cannot conceive of any more onerous debt. W. J. Jones and appellants forfeited all their rights year after year, and the only reason that their contract was not in terms forfeited by the Land Commissioner was because he recognized Braswell and Brown as being the assignees of W. J. Jones of all the right, title, and interest in the land granted by reason of the application of W. J. Jones to purchase and the execution of his obligation. The incumbrance, as contemplated in Carter v. Conner, 60 Tex. 52, rested upon the land which Jones, by his conveyance of his right, title, and interest of all the community interest, sought to remove and did remove. If the deed of W. J. Jones was a mere quitclaim conveyance, it was a quitclaim to all the interest the community had in the land. We are of the opinion that the conveyance was intended to convey all the title that the vendor had by reason of his contract with the state, which was all the title any one had. While the case of Creamer v. Briscoe, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869, seems to establish the peonage of the surviving husband in favor of his children and places a very onerous burden on him, still that decision cannot be invoked to deny the right of the survivor to sell land bought from the state to relieve himself of the incumbrance resting thereon. The decision does not compel the father to spend his life to obtain land for his children by a deceased wife but gives one-half of it to them if the father is willing to so enslave himself. The decision fully recognized the right of the husband to sell land bought from the state without the as-

sent of the wife; and it follows that, if he could sell for debts before her death, he could afterwards."

From the statement of facts above, it will be seen that in the deed from Joseph W. Lomas to Miss Minnie Mortson, whom he afterwards married, he conveys only his undivided half interest, and she nowhere assumes any part of the community debt existing against the land and which had been assumed by Joseph W. Lomas. Before, as well as after, the execution of that deed, Joseph W. Lomas still owed the state $39/40$ of the purchase price and was liable for the annual interest thereon, and we think with Judge Fly that he was not compelled to enslave himself for the purpose of liquidating the state's debt. But he had the right to sell the entire section for the purpose of paying this one debt (Cockburn v. Cherry, 153 S. W. 161), although the debt was not due at the time of the sale (Rippy v. Harlow, 46 Tex. Civ. App. 52, 101 S. W. 851). In both of the cases last cited, writs of error were denied by the Supreme Court. According to our view of the case, the deed from Joseph W. Lomas to Miss Minnie Mortson is a fact of small moment in the decision of the issues. While it is true that the conveyance of his half interest to her enabled her thereafter to realize $1,920 therefor in the subsequent sale to appellants and enabled him to dispose of the half interest which would otherwise have descended to appellee, that is a matter with which we are not concerned and which is not presented by this appeal and must be settled between appellee and his father, either as an individual or as a guardian.

It is our opinion that the judgment should be reversed and here rendered for appellant, vesting in him, as executor, the title to the land involved, and it is so ordered.