**CLEMMONS et al. v. McDOWELL et al.***
(No. 2925.)

Court of Civil Appeals of Texas. Amarillo.
Dec. 14, 1927.

Rehearing Denied Jan. 4, 1928.

1. **Appeal and error** ⬅️274(4)—**Exception to refusal of special issues was not considered, where peremptory instruction and special issues contained in same instrument were both refused and exception was to refusal of peremptory instruction.**

Where party filed written motion for peremptory instruction and requested submission of special issues as part of same instrument, and, upon court's refusal to give either the peremptory instruction or to submit the special issues, excepted only to the refusal of the peremptory instruction, proposition based on court's action in refusing the special issues could not be considered on appeal.

2. **Trial** ⬅️351(2)—**Refusal to submit all issues requested upon same paper is not error if one of them is improper.**

If all of issues requested are written upon the same paper and any of the issues is properly rejected, court does not err in refusing to submit any of the others.

3. **Vendor and purchaser** ⬅️265(3)—**Subvendee assuming vendor's lien notes becomes primarily liable thereon; original vendee's liability being that of surety.**

Subvendee assuming payment of vendor's lien notes on purchasing property becomes primarily liable for the payment of the notes, while the original vendee's liability becomes that of a surety.

4. **Husband and wife** ⬅️273(9)—**Husband as survivor of community can convey land constituting community property in payment of community debts.**

After wife's death, husband as survivor of the community had right to convey land constituting community property for the purpose of paying community debts.

5. **Husband and wife** ⬅️276(1)—**Survivor of community, where there are children, may administer community property for purpose of paying community debts without supervision by probate court.**

Upon the death of one member of the community, where there are children, surviving spouse has right to administer the community property for the purpose of paying community debts and to sell and convey property without consent of or supervision by probate court.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted.

**6. Husband and wife ⊙⟶273(4)—Husband, after wife's death, remains liable for debts contracted by him for the community during marriage.**

Debts contracted for the community by the husband during marriage remain his debts after wife's death, and community property descends subject to such debts.

**7. Husband and wife ⊙⟶276(1)—Appraisement, inventory, and bond are· not required for survivor's administration of community property for payment of debts.**

Survivor's administration of community property for payment of debts may be had without appraisement, inventory, or bond, and without consent or supervision of probate court, since heirs and distributees have rights only in the residue after payment of debts.

**8. Husband and wife ⊙⟶273(9)—Bona fide sale of property by community survivor for payment of community debts may be valid, though property conveyed has greater value than amount of debts.**

While survivor's conveyance of property must be for bona fide purpose for payment of community debts, property of greater value than amount of debts may, in some circumstances, be conveyed and sale, if made in good faith, will nevertheless be valid.

**9. Husband and wife ⊙⟶273(9)—Burden to defeat conveyance of community property by survivor having prima facie authority to sell for payment of community debts rests upon person asserting invalidity.**

If sale of community property by survivor is made in good faith for purpose of discharging community debts it is valid, and burden of showing fraud or equities relied upon to defeat the conveyance rests upon the party asserting them, where prima facie authority for sale appears.

**10. Husband and wife ⊙⟶276(6)—Good-faith purchaser of community property from surviving spouse, who qualified as community administrator and gave bond, takes ·title free from claims of heirs of deceased spouse who must look to bond (Rev. St. 1925, art. 3669).**

Good-faith purchaser of community property from surviving spouse, who qualified as administrator of community estate and gave bond, under Rev. St. 1925, art. 3667, takes title, under article 3669, giving power to dispose of community property without previous order of probate. court, free from claims of heirs of the deceased spouse, who must look to the survivor's bond for relief.

**11. Husband and wife ⊙⟶276(4)—Surviving spouse qualifying as community administrator acquires· same right to manage estate as husband exercises during marriage (Rev. St. 1925, art. 3664 et seq., and arts. 3667, 3669).**

Surviving spouse, who qualifies as administrator of community estate and gives bond,· under Rev. St. 1925, art. 3664 et. seq., and arts. 3667, 3669, acquires same right of management, control, and disposition as may be exercised by husband during existence of marriage, and survivor may make any contract necessary in connection with the estate without sanction of probate court, as in case of independent executor.

**12. Husband and wife ⊙⟶273(10)—Purchaser of community property from surviving spouse at sale made for purpose of paying debts need not look to application of proceeds.**

Where there has been no administration of estate of deceased spouse and sale is made by survivor of community property for bona fide purpose of paying debts, purchaser is not required to look to the application of the proceeds, but is merely required to act in good faith.

**13. Husband and wife ⊙⟶273(10)—Innocent purchaser at survivor's sale of community property, apparently made for purpose of discharging community debts, is protected irrespective of survivor's good faith.**

While survivor of community is not ordinarily authorized to sell community property except to pay debts, innocent purchasers of the property will be protected and the sale upheld, even if the survivor in making the sale was not acting in good faith, provided community debts existed.

**14. Husband and wife ⊙⟶273(10)—Purchasers of community property from surviving spouse had right to accept as true recitals of consideration in deed to survivor.**

Good-faith purchasers of community property from surviving spouse under conveyance apparently made for purpose of discharging debts had right to accept as true recitals in deed to survivor showing substantial cash payment was made for the property.

**15. Husband and wife ⊙⟶273(9)—Presumption arising from survivor's sale of community property that there were community debts will be sustained after lapse of years, especially where proceeding is collaterally attacked.**

After lapse of years, the presumption arising from the sale of community property after death of one of spouses, that there were community debts, will be sustained, especially where the proceeding is collaterally attacked.

**16. Executors and administrators ⊙⟶388(5)— Purchaser from administrator need not look beyond instruments constituting chain of title (Rev. St. 1925, art. 3586).**

Purchaser from ordinary administrator, under Rev. St. 1925, art. 3586, is not bound to look beyond the instruments constituting chain of title.

**17. Husband and wife ⊙⟶276(6)—Recital as to deceased spouse's heirs in application for appointment as community administrator held not to give purchaser of community property from administrator constructive notice of adverse interest of heir (Rev. St. 1925, arts. 3586, 3664, et seq., and arts. 3667, 3669, 6626, 6627).**

Recital in application by surviving spouse to be appointed community administrator, that

particular person was one of heirs of deceased wife, *held* not to give purchaser of community property under administrator's sale, under Rev. St. 1925, art. 3664 et seq., and articles 3667, 3669, constructive notice of interest which heir might have held in the property conveyed, in view of article 3586, since probate proceedings incident to appointment of community administrator were not such matters as could be registered, under articles 6626, 6627.

**18. Vendor and purchaser ⊂⟹236—Purchaser's assumption of vendor's obligation, secured by lien on land, is valuable consideration for conveyance.**

As respects purchase for value, purchaser's assumption of the vendor's obligation, secured by lien on the land, is a valuable consideration for conveyance, at least to the extent of the amount of the debt assumed.

**19. Husband and wife ⊂⟹276(6)—Persons holding under purchaser of community property, who assumed vendor's lien notes and gave purchase-money note to community administrator, held entitled to property as against equitable claim of heir of deceased spouse (Rev. St. 1925, arts. 3586, 3664, et seq., and arts. 3667, 3669, 6626, 6627).**

Purchaser of community property from surviving spouse, who qualified as community administrator under Rev. St. 1925, art. 3664 et seq., and articles 3667, 3669, and persons holding under such purchaser *held* entitled to community property so purchased as against heir of deceased spouse, mentioned in administration proceedings, who claimed under alleged oral agreement of surviving spouse to hold property for such heir, in view of articles 3586, 6626, 6627, where purchaser of the community property assumed vendor's lien notes and paid additional consideration represented by property exchanged and purchase-money note.

**20. Vendor and purchaser ⊂⟹238—Purchaser from bona fide purchaser takes good title, even with notice.**

Purchaser from bona fide purchaser takes good title, irrespective of question of notice.

Appeal from District Court, Wheeler County; W. R. Ewing, Judge.

Action by Mary Louise Clemmons and husband against D. D. McDowell and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

R. H. Templeton, of Wellington, and Donald & Donald, of Bowie, for appellants.

Carrigan, Britain, Morgan & King, of Amarillo, and Reynolds, Hill & Engledow, of Shamrock, for appellees.

HALL, C. J. The plaintiff Mrs. Mary Louise Clemmons, joined pro forma by her husband, J. E. Clemmons, sued D. D. McDowell and Magnolia Petroleum Company, a corporation, in trespass to try title to recover the title and possession of two sections of land situated in Wheeler county, Tex., described as all of sections Nos. 29 and 51 in block No. 23, H. & G. N. Ry. Company's surveys.

The defendant McDowell answered by general demurrer, plea of not guilty, and the statutes of limitation of 3 and 5 years. Rev. St. 1925, arts. 5507, 5509.

The Magnolia Petroleum Company answered by general demurrer and plea of not guilty.

The trial court directed the jury to return a verdict for the defendants McDowell, the owner of the fee, and the Magnolia Petroleum Company, the owner of an oil and gas lease covering the property, and against the plaintiffs, Mrs. Clemmons and her husband.

From the judgment entered in accordance with this verdict, this appeal is prosecuted.

It appears from the record that W. V. Bailey, the father of Mrs. Clemmons, purchased the land involved in this suit, with other property, from Thomas R. White, Jr., on October 25, 1902, for a consideration of $4,800, of which amount $1,200 was paid in cash, and the balance of $3,600 was represented by five vendor's lien notes, each in the sum of $720, due one, two, three, four, and five years after date, respectively. On March 14, 1903, he executed a deed to his father-in-law, Wade Atkins, conveying the property for the recited consideration of $1,200 in cash and the assumption of the payment of the five notes executed by Bailey to White. Bailey was the sole grantor in the deed to Atkins. In the interim between October 25, 1902, and March 14, 1903, Mrs. Alma Atkins Bailey, the wife of W. V. Bailey, died intestate, leaving a minor child, the appellant Mrs. Mary Louise Clemmons, her only heir at law. While Wade Atkins was still the record owner of the land in question, the five vendor's lien notes mentioned above were paid by Atkins to Thomas R. White, and the vendor's lien released to W. V. Bailey, his heirs and assigns. Subsequent to the payment of these notes by Wade Atkins, he, joined by his wife, Mary Atkins, conveyed the property by general warranty deed to third parties, who, in turn, reconveyed the same to Wade Atkins on September 10, 1910. On December 12, 1911, Mary E. Atkins, wife of Wade Atkins, died intestate, and an application to be appointed community administrator of the estate of himself and deceased wife was filed in the probate court of Wheeler county by Wade Atkins, on June 21, 1912. In this application, we find, in setting out the names of the heirs of Mary E. Atkins, deceased, the following:

"Mary Louise Baily, a girl eleven years old, who is the child of Alma Atkins Baily, deceased, and a grandchild of Mary E. Atkins, deceased, who resides at Mineral Wells, in Palo Pinto county, Tex."

After Wade Atkins qualified as community administrator of himself and his deceased

wife, he conveyed the land in question by general warranty deed, dated January 15, 1915, to Horace J. Young.

On April 20, 1922, Young and wife executed an oil and gas lease covering the same land to the Magnolia Petroleum Company. On October 21, 1923, by general warranty deed, Young and wife conveyed the fee to D. D. McDowell, subject to said oil and gas lease.

The peremptory instruction in favor of the defendants presents a question of fundamental error.

[1, 2] The court refused to peremptorily instruct the jury in behalf of the plaintiffs. The plaintiffs filed a written motion for peremptory instruction in their favor and, as part of the same instrument, requested the court that, if their peremptory instruction be not given, the case be submitted to the jury upon several special issues, which were incorporated in the motion. Upon the court's refusal to give either the peremptory instruction in favor of plaintiffs or to submit the several special issues, the plaintiffs excepted to the action of the court only in refusing to give the peremptory instruction. No exception was reserved to the court's action in refusing to submit the several special issues, and for this reason the proposition based upon such action cannot be considered. Requests for special issues should be submitted each upon a separate piece of paper. If all of the issues requested are written upon the same paper, and either of the issues should not be submitted, the court would not err in refusing to submit any of them. Federal Life Ins. Co. v. Hoskins (Tex. Civ. App.) 185 S. W. 607; Hovey v. Sanders (Tex. Civ. App.) 174 S. W. 1025.

[3] The record shows that, after the death of his wife, W. V. Bailey conveyed the land to his father-in-law, Wade Atkins. As part of the consideration for the conveyance, Atkins assumed the payment to Bailey's vendor of five notes for $720 each. By this transaction, Wade Atkins became primarily liable for the payment of these notes, Bailey's liability thereafter being that of a surety. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Hoeldtke v. Horstman, 61 Tex. Civ. App. 148, 128 S. W. 642; Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562.

The record shows that these notes were paid and the lien released to the assignees of Bailey about five years after the sale from Bailey to Atkins, and it may be reasonably inferred that Atkins was the payer.

[4, 5] The plaintiff's witness, Temple Atkins, testified that soon after the death of his sister, Mrs. Bailey, his father, Wade Atkins, who thought that W. V. Bailey was guilty of causing the death of his wife, told Bailey, in the presence of the witness, that if Bailey would convey the land in question to Wade Atkins the latter would not prosecute him for murder, and that Bailey then agreed to and did subsequently execute the deed dated March 14, 1903; that Wade Atkins said he would keep the land for Mary Louise Bailey (now Mrs. Clemmons). This evidence tended to rebut the contention of defendant that Bailey had sold the property for the purpose of paying community debts, and, if true, to show that Wade Atkins was not a bona fide purchaser, but there is no evidence whatever that Young, the grantee of Wade Atkins, had any knowledge of these facts prior to the date of his purchase of the land. That Bailey, as survivor, had the right to convey the land, which is conceded to be community property, for the purpose of paying community debts, is settled law in this state. Upon the death of one member of the community, where there are children, the survivor is the owner in his own right of one-half of the property, and has the right to administer the community property for the purpose of paying community debts, without the consent of or any supervision by the probate court. Levy v. Moody (Tex. Civ. App.) 87 S. W. 205; Wiseman v. Swain (Tex. Civ. App.) 114 S. W. 145; American National Bank v. First National Bank, 52 Tex. Civ. App. 519, 114 S. W. 176.

[6, 7] During the marriage, if the husband contracts debts for the community, they are, of course, his debts, and after the death of the wife he is still liable for them as before. Since property, under such circumstances, descends subject to the debts of the community, and as administration is designed to facilitate the payment of such debts, the surviving husband may freely sell and convey for the payment of those debts, which, were there an administration, the court might properly direct to be paid. In such case there is no need of the appraisement, inventory, and bond, because heirs and distributees, who were designed to be protected by the statute, have rights only in the residue after such debts are paid. Morse v. Nibbs (Tex. Civ. App.) 150 S. W. 766; Rippy v. Harlow, 46 Tex. Civ. App. 52, 101 S. W. 851; Allen v. Bright (Tex. Civ. App.) 23 S. W. 712; Fagan v. McWhirter, 71 Tex. 567, 9 S. W. 677; Davis v. McCartney, 64 Tex. 584; Ashe v. Yungst, 65 Tex. 631; Watkins v. Hall, 57 Tex. 1; Wilson v. Helms, 59 Tex. 680; Sanger v. Moody, 60 Tex. 96; Veramendi v. Hutchins, 48 Tex. 531.

[8, 9] While a conveyance must be for the bona fide purpose of paying community debts, it is not required that the property conveyed be no greater in value than the total amount of the debts, for circumstances may be such as that a debt may be paid only by making sale of property of greater value. If the sale be in good faith, for the purpose of discharging the debt, it is valid, and if prima facie authority for selling appears, because of the

existence of community debts, if fraud or any equities be relied upon to defeat the conveyance, the burden of proving such is upon the party asserting it. Cage v. Tucker, 14 Tex. Civ. App. 316, 37 S. W. 180; McBride v. Moore (Tex. Civ. App.) 37 S. W. 450; Moody v. Smoot, 78 Tex. 119, 14 S. W. 285; Horan v. O'Connell (Tex. Civ. App.) 144 S. W. 1048; Manchaca v. Field, 62 Tex. 135; Walker v. Abercrombie, 61 Tex. 69; Jones v. Harris (Tex. Civ. App.) 139 S. W. 69; Iiams v. Mager (Tex Civ. App.) 216 S. W. 422; Morgan v. Lomas (Tex. Civ. App.) 159 S. W. 869; Norwood v. King (Tex. Civ. App.) 155 S. W. 366; Grundy v. Greene (Tex. Civ. App.) 207 S. W. 964; Crawford v. Gibson (Tex. Civ. App.) 203 S. W. 375; Rippy v. Harlow, supra.

Mrs. Mary E. Atkins died December 12, 1911. The record shows that on July 1, 1912, W. A. Atkins was duly appointed community administrator of the estate of himself and deceased wife; that the estate was indebted to various creditors in a sum exceeding $75,000; and that he gave a bond as such administrator in the sum of $85,000, which was duly approved.

The plaintiffs insist that because Wade Atkins, in his application and proceedings to be appointed community administrator of the community estate, which application was filed in June, 1912, in the probate court of Wheeler county, in naming the heirs of his deceased wife, made the recitation heretofore quoted concerning Mary Louise Bailey such recitation was constructive notice to Young, precluding the possibility of Young's bona fide purchase of the interest of the plaintiff Mrs. Clemmons. This contention is without merit. The deed to Young from Wade Atkins contains this recital:

"Know all men by these presents: That I, Wade Atkins, for myself and as administrator of the community estate of myself and deceased wife, Mary Atkins, and to pay the community debts of same," etc.

[10] The surviving spouse who qualifies under Revised Statutes (1925) art. 3664 et seq., as administrator of the community estate and gives bond, as provided by article 3667, has express power, under article 3669, to dispose of the community property without any previous order of the probate court to that effect, Huppman v. Schmidt, 65 Tex. 583; and, in the absence of bad faith, the purchaser takes title, free of any claim of the heirs of the deceased spouse, who must look to the bond for relief. Watkins v. Hall, 57 Tex. 1; Ashe v. Yungst, supra.

[11] The administration of community property by the survivor is one of great latitude, under the statute. His holding is unique. He is the owner in his own right of one-half of the property, and one qualifying under the statute and giving the required bond acquires over the whole estate the same right of management, control, and disposition as may be exercised by the husband during the existence of the marriage. The survivor's powers too are much broader than those of an ordinary administrator. He may make any contract necessary in connection with the estate he represents. As stated, he is not compelled to go to the probate court for authority to act in any case, but administers the estate much as an independent executor, which person he resembles more than an administrator. Evans v. Taylor, 60 Tex. 422; Woodley v. Adams, 55 Tex. 530; Carter v. Conner, 60 Tex. 59; Osborne v. Robinson (Tex. Civ. App.) 35 S. W. 327; Huppman v. Schmidt, supra.

[12] The principal purpose of a community administration is to empower the survivor legally to dispose of the community property instead of relying upon the equitable right to dispose of it as a surviving partner without administration. Davis v. McCartney, 64 Tex. 584. When community debts are shown to exist, the necessity for a sale by the community administrator is sufficiently shown. In cases where there has been no administration, if the sale is made for the bona fide purpose of paying debts, the purchaser is not required to see to the application of the proceeds. The only requirement is that he must act in good faith. Sanger v. Moody, supra; Walker v. Abercrombie, supra; Ashe v. Yungst, supra; Morse v. Nibbs, supra; Moody v. Butler, 63 Tex. 210.

[13] While the survivor is not ordinarily authorized to sell the community property except to pay debts, yet if the rights of innocent purchasers intervene they will be protected and the sale will be upheld. McAnulty v. Ellison (Tex. Civ. App.) 71 S. W. 670; Eddy v. Bosley, 34 Tex. Civ. App. 116, 78 S. W. 565; Norwood v. King, supra; Mitchell v. Schofield (Tex. Civ. App.) 140 S. W. 254; Ruedas v. O'Shea (Tex. Civ. App.) 127 S. W. 891; Fidelity & D. Co. v. Wiseman, 103 Tex. 286, 124 S. W. 621, 126 S. W. 1109; Wallis v. Dehart (Tex. Civ. App.) 108 S. W. 180.

31 C. J. 211, states the rule as follows:

"The facts necessary to be shown by the purchaser are that there are community debts, that the property conveyed is community property, and the seller is the survivor of the community. These are all the facts which the purchaser is required to prove in order to defend his title. He does not have the burden of proving that the debts were sufficient in amount to indicate the necessity for the sale. A presumption of good faith attends the sale, and the purchaser may rely thereon, provided, of course, he has no notice that, or the facts surrounding the sale are sufficient to incite inquiry whether, the power to sell is being exercised for some ulterior purpose; the burden is upon the party attacking the sale to prove fraud or bad faith."

The following cases are cited in support of the doctrine announced: Johnson v. Harrison, 48 Tex. 257; Solomon v. Mowry (Tex.

Civ. App.) 61 S. W. 335; Cage v. Tucker, 14 Tex. Civ. App. 316, 37 S. W. 180; Norwood v. King, supra; Iiams v. Mager, supra; and Stone v. Light (Tex. Civ. App.) 228 S. W. 1108.

To entitle the defendants to a recovery, it is not necessary that Wade Atkins should be a bona fide purchaser. If the evidence shows that he had the right to sell and that Young paid value in good faith, then the latter is entitled to protection without any regard to whether Atkins in selling also acted in good faith. The inquiry is limited to the bona fides of Young. Downs v. Stevenson, 56 Tex. Civ. App. 211, 119 S. W. 315.

[14] As affecting the issue of good faith, Young had the right to accept, as true, the recitals in the deed from Bailey to Atkins, that $1,200 had been paid in cash. This also applies as to McDowell and the Magnolia Petroleum Company as to the recital of an exchange of land in the deed from Atkins to Young, Welborn v. Earle (Tex. Civ. App.) 268 S. W. 982; Downs v. Stevenson, supra.

[15] After the lapse of years, the presumption arising from sale that there were community debts will be sustained, especially when the proceeding is collaterally attacked. Stipe v. Shirley, 33 Tex. Civ. App. 223, 76 S. W. 307; Cruse v. Barclay, 30 Tex. Civ. 211, 70 S. W. 358; Hensel v. Kegans, 79 Tex. 347, 15 S. W. 275; Auerbach v. Wylie, 84 Tex. 615, 19 S. W. 856, 20 S. W. 776.

There is no testimony in the record tending to impeach the good faith of either Wade Atkins or Young, when the latter purchased the property less than three years after Atkins qualified as community administrator.

[16, 17] Revised Statutes, art. 3586, requires the ordinary executor or administrator, in executing a conveyance of the property being administered, to recite in his deed the decree of the court confirming the sale and ordering the conveyance to be made, but there is no such requirement relating to deeds executed by community administrators. The purchaser from such an administrator is not bound to look beyond the instruments which properly constitute the chain of title, but if any such duty rested upon the purchaser, the recital in the proceedings that Mary Louise Bailey, a girl eleven years old, was one of the heirs of Mrs. Mary E. Atkins would not be constructive notice of any interest which she might have adversely to such purchaser, because, under the law relating to such administrations, she is protected by the administrator's bond.

We have concluded that the statement in Wade Atkins' application to be appointed community administrator, with reference to his granddaughter, was not notice. Under Revised Statutes, arts. 6626 and 6627, the probate proceedings incident to the appointment of Atkins as community administrator were not such matters as could be registered, and the recitals therein were not notice to Young or his vendees. Allen v. Atchison, 26 Tex. 616; Davis v. Harmon, 9 Tex. Civ. App. 356, 29 S. W. 492; Thompson v. Rust, 32 Tex. Civ. App. 441, 74 S. W. 924; Russel v. Farquhar, 56 Tex. 355; Lewis v. Cole, 60 Tex. 341; Thomas v. First National Bank of Hico, 60 Tex. Civ. App. 133, 127 S. W. 844.

[18] The assumption of the vendor's obligation, secured by a lien on the land, is a valuable consideration, at least to the extent of the amount of the debt assumed. Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 399; 2 Pom. Eq. Jur. (4th Ed.) § 751.

[19, 20] Young's deed recites that he paid $4,500 to Atkins in an exchange of lands which he owned, and as further consideration he assumed Atkins' notes aggregating $26,000, one payable to a trust company and the other to T. C. Phillips. These notes were secured by liens upon the land in question. As additional consideration, Young gave Atkins his note for $4,500, secured by a third lien upon the land in question, and, in so far as the record shows, this note was negotiable. According to the recitals in the deed from Young and wife to McDowell, the grantee paid $11,000 cash, assumed two notes to J. L. Huggins, which were signed by Young, aggregating $17,000, and the remainder of the recited consideration was the conveyance of two sections of land in Wheeler county, which McDowell says he deeded to Young. We may assume, from these recitals, that Young had paid or in some way discharged the notes which had been assumed by him, payable to the trust company and Phillips. There is no evidence tending to impeach the good faith of the Magnolia Petroleum Company, and, while it did not show the actual payment of the $2,500 consideration recited in its lease other than by the recital, it is entitled to protection under the rule that purchaser from a bona fide purchaser takes a good title even with notice. Lewis v. Johnson, 68 Tex. 450, 4 S. W. 644; Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452; R. B. Godley Lumber Co. v. Tea Garden (Tex Civ. App.) 135 S. W. 1109; Long v. Shelton (Tex. Civ. App.) 155 S. W. 945; Duckworth v. Collie (Tex. Civ. App.) 235 S. W. 924.

There being no issues of fact which should have been submitted to the jury, the court did not err in directing a verdict, and the judgment is affirmed.